IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
CRIMINAL DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **2:23-CR-00146-NR-1** |
| | : | |
| **v.** | : | |
| | : | |
| **BRIAN DIPIPPA,** | : | |
| | : | **HONORABLE JUDGE** |
| **DEFENDANT.** | : | **J. NICHOLAS RANJAN** |

**BRIEF IN SUPPORT OF DEFENDANT'S**
**MOTION FOR PRETRIAL RELEASE**

AND NOW, comes the Defendant Brian Dipippa, by and through his attorney, Michel J. Deriso and the DeRiso Law Group who file on his behalf the following Brief In Support Of Defendant's Motion For PreTrial Release and in support thereof state:

**PROCEDURAL STATUS**

1. An Indictment was returned by the Grand Jury charging the Defendant with Conspiracy, an alleged violation of 18 U.S.C. 371; Obstruction of Law Enforcement During Civil Disorder, an alleged violation of 18 U.S.C. 2 and 231(a)(3); and Use of Explosive to Commit Federal Felony, an alleged violation of 18 U.S.C. 844(h)(1).

2. Defendant, upon learning of the Indictment, turned himself in and was arrested.

3. Defendant made his initial appearance and was detained on June 30, 2023 with a detention hearing scheduled for July 3, 2023.[1]

---

[1] ECF 19.

4. Counsel for Defendant filed a Brief in Opposition to Detention.[2] At the conclusion of the Detention Hearing, Magistrate Judge Cynthia Eddy entered an Order of detention, however, the Order listed this prosecution as a presumption case.[3]

5. Thereafter, Defendant changed counsel[4] and undersigned counsel filed a Motion To Rebut the Presumption.[5]

6. On August 31, 2023 an in person status conference was conducted in open court and at the conclusion of that conference the Court issued the following Order:

| 08/31/2023 | 59 | ORDER re 54 Motion for Pretrial Release filed by BRIAN DIPIPPA (1). As discussed on the record at the 8/31/2023 status conference, counsel shall confer as to whether it is necessary to supplement the record prior to briefing and then, by 9/7/2023, file a joint proposed order setting forth a schedule for supplementing the record and a briefing schedule on the 54 motion. Signed by Judge J. Nicholas Ranjan on 8/31/2023. Text-only entry; no PDF document will issue. This text-only entry constitutes the Order of the Court or Notice on the matter. (pak) (Entered: 08/31/2023) |

7. As required in the Court's Order, the parties consulted, reviewed transcript and notes and after completing investigation agreed that the Government had not requested the presumption designation and that the designation was in error.

8. The parties then filed a Joint Proposed Order indicating same.[6]

9. The Court set a schedule for the supplementing of the record and the filing of the Briefs of the parties.[7]

---

[2] ECF 29.  In addition to the information submitted in this Brief, Defendant also incorporates and adopts the all of the arguments set forth therein in opposition to his continued detention.
[3] See, ECF 35, 37.
[4] ECF 47.
[5] ECF 54.
[6] ECF 60.
[7] ECF 61.

10. Defendant incorporates by reference all of the arguments and facts set forth in Defendant's Proffer and Brief in Support of Release Pending Trial (ECF 29), Defendant's arguments set forth at the Detention Hearing on July 3, 2023 before the Honorable Cynthia Eddy and the Defendant's Motion For PreTrial Release in Presumption Case (to the extent applicable and not specifically directed to Presumption arguments) at ECF 54.

**ARGUMENT**

The Government stipulates that this is not a presumption case, *"but rather a case involving a charge of a crime of violence for which the Government has requested Detention based on [an] argument that there is clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of other persons and/or the community."*

The statute requires that the facts the judicial officer uses to support a finding that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence.  18 U.S.C. § 3142(f); see also, *United States v. Chimurenga*, 760 F.2d 400 (2nd Cir. 1985); *United States v. Jackson*, 845 F.2d 1262, 1264, n.3 (5th Cir. 1988); *United States v. Hazime,* 762 F.2d 34, (6th Cir. 1985); *United States v. Orta*, 760 F.2d 887 (8th Cir. 1985); *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).  The District Court in *United States v. Fatiuco*, 458 F.Supp. 388 (E.D.N.Y. 1978), aff'd 603 F.2d 1053 (2nd Cir. 1979) quantified clear and convincing evidence as above 70 percent certain.  The quantification was neither affirmed or rejected by the Court's decision in the same case.  Fatico, 603 F.2d at 1053.  In United States v. Gray, 651 F.Supp. 432 (W.D. Ark. 1987) the court discussed at length the meaning of clear and convincing evidence, concluding that it is not necessary the Judge be "plumb sure" that no set of conditions will protect the public, but the judge should be "pretty sure."

In *United States v. Bell*, 673 F. Supp. 1429 (E.D. Mich. 1987) the court accepted the following definition of "clear and convincing."

> [W]itnesses to a fact must be found to be credible and that the facts to which they have testified are distinctly remembered and the details thereof narrated exactly and in due order, so as to enable the trier of facts to come to a clear conviction without hesitancy of the truth of the precise facts in issue.
>
> *Id*. at 1431

It is, of course, the government that bears the burden of showing dangerousness by clear and convincing evidence. Clear and convincing evidence means proof that a particular Defendant actually poses a danger to the community, not that a defendant ***in theory*** poses a danger. *United States v. Patriarca*, 948 F.2d 789 (1st Cir. 1991). No such dangerousness is present here.

**PRETRIAL RELEASE UNDER THE BAIL REFORM ACT**

The bail reform provisions found in 18 U.S.C. § 3142 of the Act provide a judicial officer four options when determining pretrial release. They are:

(1) release the defendant on personal recognizance;
(2) release the defendant on conditions;
(3) temporarily detain the defendant to permit revocation of conditional release, deportation or exclusion, or;
(4) detain the defendant.

The Act requires the court to impose the least restrictive set of conditions reasonably necessary to secure the defendant's appearance or the safety of the community, meaning that the Court must release a defendant without conditions unless if finds, based on the evidence that conditions are needed. Section 3142(g) sets forth the factors the judicial officer shall take into account when making the determination:

(1) the nature and circumstances of the offense charged;

(2) the weight of the evidence;

  (3)  the history and characteristics of the person including;

    (a)  the defendant's character;

    (b)  physical and mental condition;

    (c)  family ties;

    (d)  employment;

    (e)  financial resources;

    (f)  length of residence in the community;

    (g)  community ties;

    (h)  past conduct;

    (i)  history relating to drug or alcohol abuse;

    (j)  criminal history;

    (k)  record of appearance at court proceedings;

    (l)  whether at the time of the current offense or arrest the defendant was on probation, parole or other release pending trial, sentencing, appeal or completion of a sentence; and

    (m)  the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

Section 3142(g) does not rank or explain how much weight should be accorded to each of its listed factors. *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985 (partially abrogated on other grounds by *United States v. O'Brien*, 895 F.2d 810, 814 (1st Cir. 1990).  As Magistrate Eddy failed to either inquire and/or address each of the required elements during the detention hearing, Defendant will address each of the Section 3142(g) factors, *seriatim*.

  (1)  the nature and circumstances of the offense charged;

As the result of an incident alleged to have occurred on April 18, 2023, on the University of Pittsburgh Campus, the Government alleges that the Defendant and his co-defendant committed offenses against the United States, particularly, (i) conspiracy, in violation of 18 U.S.C. § 371; (ii) obstruction of law enforcement during civil disorder, in violation of 18 U.S.C. § 2 and 231(a)(3); (ii) use of an explosive to commit a federal felony, in violation of 18 U.S.C. § 844(h)(1).[8]

      2.    the weight of the evidence;

The evidence provided to date is not dispositive and is comprised of various photographic and video evidence, none of which establishes the Defendant to be the perpetrator of the acts attributed to him, but rather is comprised of government conjecture, surmise and projection based upon its perception of the Defendant's political profile and associations with others. Further, there is significant question about the quantity and quality of the evidence gathered by law enforcement at the scene of the alleged crime, described by the government as the "civil disorder" on April 18, 2023.  Finally, there is a significant question as to whether or not the firework in question, allegedly purchased from a licensed fireworks dealer, and allegedly thrown at law enforcement was an "explosive device", a "destructive device" or otherwise.

      (3)    the history and characteristics of the person;

          (a)    the defendant's character;

The Defendant's character is positive and most aptly described by parties who have submitted letters of support on his behalf.  Those letters include testimonials submitted with Defendant's Motion To Rebut the Presumption[9]  Notably, as set forth in the letter supplied by

---

[8] ECF 4.
[9] ECF 54 – 1 & 2

Nancy Kahn, DEIBJ Coach, Consultant and Strategist at the Dr. Chavez DEIBJ Employee Wellness Pilot Program who writes:

I have known Brian DiPippa for more than six years. I had the opportunity to work closely with him at KPFA and watched him interact with staff and community members on a regular basis. Brian is someone who acts with high integrity and who cares deeply about people. He is generous with his time and works tirelessly to support others. He is a leader and a team member. I have watched him feed people who are unhoused, and rush over to help a stranger without hesitation when there was an escalating conflict occurring in a restaurant where we were holding a business lunch meeting.  He has a great work ethic, a huge heart, and in my opinion makes this world a better place. He shows empathy and he volunteers his time. This is who he is and he never displayed anything but integrity and presence in the years I worked with him on a number of projects, sat in countless meetings with him, and while I was supporting his leadership role within a 70+ year old community-based broadcast media organization.

I have worked with thousands of people in my career as a practitioner of Nonviolent Communication, and as a professional mediator and DEI coach and consultant. When I meet people like Brian, I feel more hopeful about our world because he is one of the really good men out there who is self aware of his male privilege and consciously makes this a safer world for women, children and the most marginalized people to live. It is a privilege and an honor to call him a friend.

                                            Nancy Kahn

Mr. DiPippa's character is further established by a letter from Brian Knauss of Riseup Networks, who writes:

I am writing today on behalf of Brian DiPippa, with whom I have had the great pleasure of working with. Brian has been an inspiring addition to our team. During his time working with Riseup Networks, he has really gone above and beyond in accomplishing his work and enriching the environment he has been a part of here. His presence has been both invigorating and refreshing, and he brings a sense of joy to the many thankless tasks upon which we are focused. Brian has always been punctual, dependable, respectful of his coworkers and generally makes the workplace a better place.

We respectfully request that Brian be granted the opportunity to be released from pre-trial detention on bail. We look forward to his return to our team and continuation of the

wonderful work he has been contributing to here at Riseup Networks.

Brian Knauss

Mr. DiPippa's character is further established by his relationship with his Uncle, a VietNam veteran, Joseph Michael Drischler, age 74. In recent years, Mr. Drischler was in decline, suffering from PTSD, atrial fibrillation, and COPD. Indeed, Mr. DiPippa saved his Uncle Joe's life when, after not hearing from him for some 24 hours, Mr. DiPippa did a wellness check on his Uncle and found him naked, on the floor, unable to move. Mr. DiPippa quickly covered him up, rendered first aid and called an ambulance. His Uncle Joe had suffered a stroke and had he been left there unattended for much longer, would have died.

Prior to that incident, Mr. DiPippa had been caring for his Uncle Joe who returned home from VietNam impacted by significant exposure to Agent Orange. In the last few years, he had been unable to walk and had limited use of his arms. He recently had a toe amputation and suffered multiple strokes. Mr. DiPippa is his Uncle Joe's closest relative.

Prior to his arrest, Mr. DiPippa arranged for his Uncle Joe to be admitted to the VA Hospital on Highland Drive where he is able to receive the level of care he requires. Mr. DiPippa visited him as he was able, also bringing him food on several occasions, providing his Uncle with a television and simply spending time with him as time permitted.

Mr. DiPippa is well liked among his friends and peers. He is happily married and shares a solid live with his wife Krystal. His character is unassailable.

      (b)      physical and mental condition;

Mr. DiPippa is a healthy 43 year old male. He suffers from sleep apnea for which he requires a C-PAP machine. He maintains a Vegan diet and does not use alcohol or drugs.

      (c)      family ties;

Mr. DiPippa maintains frequent contact with his mother and father who are divorced. His father, Joe DiPippa lives in Dormont and is close with his son. He has one brother who lives in Los Angeles.  They are in contact as time permits, however, have always been close.  He and his wife, Krystal are in the process of restoring a residence where they hope to live out their lives, at 5513 Broad Street in Garfield. Pictures of the renovation/resotration process are included in the Supplement to the Record filed contemporaneously with this Brief.  Despite his detention, Mr. DiPippa remains in contact with his uncle, Joe Drischler, primarily through his wife Krystal who remains free as of this filing.

    (d)  employment;

Mr. DiPippa has had a lengthy employment history.  He has an associate degree in computer science and has consistently been employed in the fields of information technology and systems administration.  Riseup Networks has confirmed that, if released, Defendant will have immediate employment, including employment with Newday.Host.  Previously, he worked at Youth Radio in Oakland California and KPFA.

    (e)  financial resources;

As Mr. DiPippa has not worked since being detained on the instant prosecution, he and his wife have sufficient resources to carry them through (however tightly) until his release or disposition of the instant prosecution.

    (f)  length of residence in the community;

Mr. DiPippa has significant ties to the community. He was born and raised in Pittsburgh. He has lived a substantial portion of his adult life in Western Pennsylvania.  He graduated from Keystone Oaks High School and went on to CCAC where he graduated with an Associate Degree in

Computer Science.  After a short foray to California, he returned to Western Pennsylvania.  He intends to continue to reside in Western Pennsylvania once this matter concludes.

    (g)  community ties;

Mr. DiPippa has significant ties to the Pittsburgh community.  His friends from high school and college remain here.  If released by the Court from detention, Mr. DiPippa would return home to continue the restoration/rehabilitation of 5513 Broad Street.  His work permits him to work remotely so he could work from the parties residence if permitted by the Court.

All of Mr. DiPippa's firearms have been consigned for sale to AAdvantage Firearms in Etna, Pennsylvania.  The contact information for AAdvantage and Rick Genser the owner are available publicly but will be provided if requested.  There are no dogs or firearms on the premises at 5513 Broad Street.  In the even the court imposes EHM, a landline is already installed.

In the event the Court feels that a Third Party Custodian is a more appropriate release, then Mr. Dipippa would stay with Kacyn Keys and Dustin Perri (married) who have agreed to act as Third Party Custodians, assuming they are suitable to the Court.  Mr. Perri is an Art handler at the Carnegie Museum and Ms. Keys is a software Consultant with Hike2, a local consulting company.  There are no guns or dogs in their home. There is not a landline in the residence, however, they have assured counsel that they will have one installed if required.  They are available for further inquiry if the Court so requires.  A Third Party Custodian will provide Mr. Dipippa with an additional level of support and supervision.  Their contact information is available upon request.

    (h)  past conduct;

Mr. Dipippa's criminal history consists of two summary disorderly conducts, one of which has been expunged.  The expungement for the guilty plea to disorderly conduct in 2006 is included in the Supplement to the Record, filed contemporaneously with this Brief.  Otherwise, Mr. DiPippa's conduct

throughout his life has been exemplary. He has no significant contact with law enforcement and other than the instant charges has led a law abiding life. He has a steady history of employment, he pays his taxes and votes. He is active in his community and serves others. His conduct is without reproach.

    (i)  history relating to drug or alcohol abuse;

Mr. DiPippa has no such history.

    (j)  criminal history;

Mr. Dipippa's criminal history consists of two summary disorderly conducts, one of which has been expunged. The expungement for the guilty plea to disorderly conduct in 2006 is included in the Supplement to the Record, filed contemporaneously with this Brief. Those summary convictions should not preclude this Court from granting release on stringent conditions. See United States v. Traitz, 807 F.2d 322, 324-25 (3d Cir. 1986) (holding district court did not err in concluding that house arrest would provide sufficient assurance even where government presented evidence that defendants' used "violence and intimidation" as part of their offense conduct, and one defendant had "twice been convicted of armed bank robbery.").

    (k)  record of appearance at court proceedings;

As set forth above, Mr. Dipippa's criminal history consists of two summary disorderly conducts, one of which has been expunged. At all times, even with the two summary offenses, he appeared when required, entered his pleas and paid his penalty. There is absolutely no evidence nor should there be, that he will appear at all court proceedings. Additionally, Mr. DiPippa has turned over his Passport to counsel and counsel will surrender the Passport to AUSA Sweeney if requested. Mr. DiPippa is not a flight risk and should not be viewed as one. Mr. DiPippa has guaranteed counsel that if released, even with the most stringent conditions, as outlined below, he will appear at all proceedings as required. Counsel is inclined, as an officer of the Court, to believe him.

    (l)  whether at the time of the current offense or arrest the defendant

>was on probation, parole or other release pending trial, sentencing, appeal or completion of a sentence; and

At the time of the current offense or arrest, Mr. DiPippa was not on probation, parole or other release pending trial, sentencing, appeal or completion of a sentence.

> (m) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

Contrary to the assertion by the Government "that defendant will obstruct or attempt to obstruct justice, or threaten, injure or intimidate or attempt to threaten, injure or intimidate a prospective witness or juror" there is simply no credible evidence that this is a likelihood or possibility. The Defendant has no history of violent acts, nor obstruction, attempts or otherwise that should give the Court pause. If those concerns exist within the Court's view, then Mr. DiPippa agrees to the most stringent of conditions of release.

A defendant cannot be detained "unless a finding is made that no release conditions will 'reasonably assure . . . the safety of the community'" and the defendant's appearance in court. Dominguez, 783 F.2d at 707 (quoting § 3142(e)). The following conditions of release under § 3142(c)(1)(B), and any other conditions the Court deems necessary, will reasonably assure Mr. Dipippa's appearance in court and the safety of the community.

- Place Mr. Dipippa in custody of third-party custodian "who agrees to assume supervision and to report any violation of a release condition to the court" [§ 3142(c)(1)(B)(i)]. As mentioned above, this mother, Kacyn and Dustin Perri will serve as the third-party custodian.
- Maintain employment. (See above)
- Follow restrictions on "personal associations, place of abode, or travel"
- Electronic monitoring, GPS monitoring, home detention (which allows Mr. Dipippa to leave for employment and other approved purposes).
- Avoid "all contact with a potential witness who may testify concerning the offense"
- Report on a "regular basis" or "daily basis" to Pre-Trial Services.
- Refrain from possessing "a firearm, destructive device, or other dangerous weapon"
- Refrain from "excessive use of alcohol"

- Refrain from "any use of a narcotic drug or other controlled substance . . . without a prescription"
- "[A]ny other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community." (emphasis added)

### Conclusion

For all of the foregoing reasons, Mr. Dipippa respectfully requests that this Court find that release pending trial is appropriate and that there are conditions which can be imposed to assure the safety of the public and Mr. DiPippa's appearance at all Court proceedings as required.

                                      Respectfully submitted,
                                      THE DERISO LAW GROUP

                                      /s/ *Michael J. DeRiso*
                                      _____
                                      MICHAEL J. DeRISO, ESQUIRE
                                      Pa. Supreme Court Id. No.:  76555
                                      *Counsel to Defendant Brian Dipippa*

September 22, 2023                     2100 Law & Finance Building
                                      429 Fourth Avenue
                                      Pittsburgh, Pennsylvania 15219
                                      Phone: 412.765.1100
                                      Email:  derisio_esq2@msn.com