IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 2:23-CR-00146-NR-1 |
| | : | |
| v. | : | *Filed Electronically via ECF* |
| | : | |
| BRIAN DIPIPPA, | : | |
| | : | HONORABLE JUDGE |
| DEFENDANT. | : | J. NICHOLAS RANJAN |

### DEFENDANT BRIAN DIPIPPA'S REPLY BRIEF TO GOVERNMENT RESPONSE TO DEFENDANTS' PRETRIAL MOTIONS

AND NOW, comes the Defendant Brian Dipippa by and through his attorney, Michael J. DeRiso, Esquire and the DeRiso Law Group who submit on his behalf this Reply Brief To the Government's Response to Defendants' PreTrial Motions (ECF Doc. No. 93). Defendant Brian DiPippa has received ECF 93, reviewed the same and responds as follows:

### REPLY TO SELECTIVE PROSECUTION RESPONSE

At ECF Doc. 82, Defendant filed a Motion to Dismiss on Grounds of Selective Prosecution. In its Response the Government contends that:

"In the Motion to Dismiss on Grounds of Selective Prosecution (Doc. No. 82), defendant Brian DiPippa alleges, with no factual support whatsoever, that the government has charged him because the government has classified him as an extreme anarchist who holds extremist, antigovernment and anti-law enforcement belief. He further alleges that, because of that classification by the government, "in conjunction with his alleged acts" on April 18, 2023, the government has decided to charge him in this case. Defendant Brian DiPippa additionally claims, again with no factual support, that the charges in this case have been brought pursuant to a Department of Justice policy "directive that federal prosecutors should aggressively punish conduct relating to the protected First Amendment activities that spring from transgender issues." According to defendant Brian DiPippa, these purported facts demonstrate that the government has brought these charges "for a discriminatory purpose," which has "a discriminatory effect" and, therefore is in violation of his constitutional rights. He characterizes this case as a "selective prosecution" warranting dismissal. In support of this argument,

defendant Brian DiPippa cites to <u>Wayte v. United States</u>, 470 U.S. 598 (1985) and <u>United States v. Armstrong</u>, 517 U.S. 456 (1996).

Mr. DiPippa contends that he would not have been prosecuted by the Government but for his Fist Amendment activities.  As explained by the U.S. Supreme Court, "the decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, including the exercise of protected statutory and constitutional rights."  See, *Wayte v. United States*, 470 U.S. 598 at 608 (1985).  In *United States v. P.H.E., Inc.,* 965 F.2d 848, 853 (10th Cir. 1992) the Court held that a prosecution "motivated by a desire to discourage expressions protection by the First Amendment must be enjoined, dismissed, irrespective of whether the challenged action could possibly be found to be unlawful."

In establishing a selective prosecution claim, a defendant must demonstrate that the federal prosecutorial policy "had a discriminatory effect and that it was motivated by a discriminatory purpose."  *United States v. Armstrong*, 517 U.S. 456, 463 (1996).  In Wayte, 470 U.S. at 608, the Court stated that "additional evidence of discriminatory purpose is not necessary when there is "an overtly discriminatory classification."

William Barr, during his tenure at DOJ told his assistant attorney generals to bring cases, such as this one, because the Trump administration disagreed with the point of view of demonstrators.  See, Aruna Viswanatha & Sadie Gurman, Barr Tells Prosecutors to Consider Charging Violent Prosecutors With Sedition, The Wall Street Journal (Sep. 17, 2020). https://www.wsj.com/articles/barr-tells-prosecutors-to-consider-charging-violent-protestors-with-sedition-11600276683.  Federal prosecutors have judiciously followed the directive of former Attorney General William Barr.  In late 2020, the Justice Department through its Office of Public Affairs, stated that "more than 300 individuals in 29 states including the District of

Columbia have been charged for crimes committed adjacent to or under the guise of peaceful demonstrations since the end of May, 2020.[1]

Political prosecutions of that sort are contrary to the normal standards for prosecution, as set forth in the Justice Department's Justice Manual. That manual directs federal prosecutors to decline to prosecute if "the prosecution would serve no substantial federal interest" or "if the person is subject to effective prosecution in another jurisdiction."[2] Here, the Defendants could have been prosecuted locally and reference to the Justice Department's Justice Manual does not support a finding of a substantial federal interest in the DiPippa case. Indeed, if anything, the Department's Justice Manual stands in stark opposition to the finding of a substantial federal interest in this matter. Sometimes, a finding of federal interest in prosecuting cases, such as the DiPippa's is based upon the following criteria: the nature and seriousness of the offense; the person's culpability in connection with the offense; the person's history with respect to criminal activity; the persons personal circumstances; and the probable existence of other consequences if the person is convicted.[3]

Here, the only consideration that weighed in favor of the federal government prosecuting stems from the discriminatory purpose advocated by former Attorney General Barr, notably, the directive that federal prosecutors should aggressively punish conduct relating to protected First Amendment activities.

---

[1] Department of Justice, Office of Public Affairs, Over 300 People Facing Federal Charges for Crimes During Nationwide Demonstration. (September 24, 2020). https://www.justice.gov/opa/pr/over-e00-people-facing-federal-charges-crimes-committed-during-nationwide-demonstrations.

[2] United States Department of Justice, Justice Manual § 9-27.220 (2021).

[33] See, United States Department of Justice, Justice Manual § 9-27.240.

Agents for the Government have repeatedly referred, in proceedings and in various reports, to Brian DiPippa as an "Anti-Government/Anti Authority – Anarchist Violent Extremist".[4]  Despite significant evidence to the contrary.[5] Further lending credence to the selective prosecution argument is the fact that during the protests, (indicated to have begun as early as 6:30 p.m. or earlier and reported to have ended at approximately 10:21 p.m.) other acts, including a burning in effigy,[6] as well as other acts by third parties did not result in any other prosecutions or charging's.  The inescapable conclusion is that the Government, consistent with the 2020 directive by former Attorney Barr, continues to prosecute and aggressively seek to punish conduct involving protected First Amendment activities. Accordingly, your Court should find this prosecution a selective prosecution and dismiss all charges against the Defendants.

---

[4] See, Counterterrorism, Pulcastro, John FD 1057, Opening of 266 Full Investigation on Brian David DiPippa, dated 5/01/2023.

"To open a new full investigation on Brian David DiPippa, an anarchist extremist who engaged in and conspired with others to commit, acts of violence and other federal crimes, . . .  FBI Pittsburgh is opening captioned investigation based on an articulable factual basis that reasonably indicates Brian David DiPippa engaged in, and conspired with others, to commit acts of violence and other federal crimes in furtherance of Anarchist Violent Extremist (AVE) social and political goals. As a matter of background, AVEs are defined as individuals who engage in, or threaten to engage in, force or violence, to effect social or political change in response to perceived economic, social, or racial hierarchies, or perceived government overreach, negligence, or illegitimacy. Historically, AVEs have engaged in acts of violence and other federal crimes targeting individuals and property they believe represent fascism, racism, capitalism, government, and law enforcement. Over the past several years a number of AVEs have been arrested throughout the United States on federal charges related to civil
disorder, destruction of federal property, rioting, threatening violence, and unlawful possession of destructive devices. According to the FBI Consolidated Strategy Guide (CSG), the most serious threat posed by AVEs has, and likely will continue to be, use or potential use, of improvised incendiary devices or improvised explosive devices, resulting in injuries to law enforcement and others during confrontations that often arise from Constitutionally protected protests.

Brian David DiPippa has a history of engaging in the planning, preparation, facilitation, or commission of acts of violence or other federal crimes in furtherance of his AVE ideology."

[5] A check of his criminal record reveals no acts of violence nor submission to government authority.  Indeed, his criminal record was such that he was granted an active firearm carry permit in Allegheny County.

[6] An effigy of Michael Knowles was ignited by protestors on O'Hara Street.

<u>REPLY TO RESPONSE (XI) TO COMMERCE CLAUSE CHALLENGE</u>
<u>SET FORTH IN BILL OF PARTICULARS RE: COMMERCE CLAUSE</u>
<u>RE: DOCUMENT NO. 89</u>

The Defendants have argued that the acts attributed to them are too far removed from any connection to commerce. The challenge to the Commerce Clause is set forth in the request for a Bill of Particulars related to the Commerce Clause element. The Government response to that request appears at section XI, pages 32 through 34, of the Response. In its Response, the Government argument relies heavily on United *States v Pugh*, 90 F.4th 1318 (11th Cir 2024).

In *Pugh*:

> Pugh and a group of protesters deviated from the planed protest route and approached a ramp to Interstate 10. The ramp they approached was near Exit 26B of Interstate 10, an exit **used by commercial vehicles carrying hazardous materials across state lines**. I response, the police attempted to block access to the ramp by forming a barricade. The police, **in coordination with the Alabama Department of Transportation shut down traffic along the ram and closed the exit.** The Alabama Department of Transportation **also rerouted vehicles on the interstate**, which slowed traffic and forced **commercial vehicles** carrying hazardous materials to take a longer route. *Pugh* at 1319.

Here, the Government simply alleges with no specificity or particularity that the "*civil disorder obstructed, delayed and adversely affected interstate commerce and the movement of articles and commodities in interstate commerce, **did move and attempt to move steel barrier and use an ignitable firework to obstruct, impede and interfere with law enforcement officers lawfully engaged in the performance of official duties.***" (Government Response p32). The Government attempts to explain and/or define the Commerce Clause violation by using

paragraph 21 of the Affidavit of Probable[7] cause attached to the Search Warrant of the Defendants' home.

That paragraph:

a. sets forth the purpose of the presentation;

b. sets forth unspecified Safety concerns (at 9pm, 1 ½ hours after the alleged conduct of Defendants) allegedly causing UPP to cancel the "Meet and Greet" after the debate;

c. sets forth security costs incurred by UPP, (however, those expenses and security costs were in place prior to the event and no additional costs, expenses and security costs are identified or alleged).

There are no activities or consequences directly related to the alleged actions of the Defendant some 1 ½ hours prior to the start of the event. Further, the protests were continuous (including a burning in effigy of one of the speakers) and ongoing even after

---

[7] The Affidavit set forth at Paragraph 21 states:

21. Intercollegiate Studies Institute (ISI) is a non-profit 501(c)(3) educational organization funded by thousands of individuals and dozens of charitable foundations in Pennsylvania and around the country. ISI is headquartered in Wilmington, Delaware. Their mission is to provide access to speakers and presenters for college students around the country. They focus on the freedom of speech and the right to peacefully assemble. ISI was responsible for organizing and paying for the speaking event on April 18, 2023, at the University of Pittsburgh featuring Michael Knowles and Brad Polumbo. ISI paid approximately $10,000 each to Michael Knowles and Brad Polumbo to have them speak at the event, and approximately $2,500 to the moderator, Leah Libresco Sargeant. There were two components scheduled to take place on April 18, 2023. These included a 90-minute organized debate and a 60-minutes Very Important Persons (VIP) meet and greet with ISI staff, students, and Michael Knowles. Due to safety concerns arising from the activity outside of the O'Hara Student Center on the night of April 18, 2023, UPP made the decision to end the event at approximately 9:00 p.m., thereby cancelling the promised "Meet and Greet" that was supposed to occur afterward. Consequently, ISI paid the speakers and moderator a total of $22,500 plus travel and lodging expenses for a service that was not fulfilled to the extent of the terms agreed upon. In addition, ISI incurred security costs totaling approximately $27,796.04 for the following services: $16,925.16 to the University of Pittsburgh for 28 UPP officers and 11 UPP supervisors for six (6) hours; $3,006.25 to a private security company called RIP Security; and $7,864.63 to Michael Knowle's private security, to include travels and lodging expenses. Despite the total security costs, protection was not adequate enough to maintain a safe enough environment in order to conduct the event as planned.

Defendants (if indeed they were present and it is not admitted that they were) had left the area.

Unlike the facts in *Pugh*, here, no actions were taken to limit or stop or re-route any commercial vehicles, work with other Pennsylvania government agencies to restrict any motor vehicle or highways, and the Interstate Highway was not shut down.  In fact, the only consequence alleged by the Government was the cancellation of the "Meet and Greet" due to unstated and unidentified safety concerns (and not as a direct consequence of the alleged activities of the Defendants alleged to have taken place earlier) and security costs paid by UPP that were already in place and, again, have not been linked to any actions by the Defendants.

Unlike the *Pugh* case where the actions of the Defendant Pugh were the direct cause of the Interstate being closed and traffic being rerouted, among other things, here, the Government response fails to identify any specific actions that were taken by law enforcement or any government entity as the result of 2 smoke bombs and a firework earlier, not to mention the burning in effigy and other acts.

Here, the Government response implies and suggests that UPP had to pay additional security costs associated with the protest, however, there is no specific link to these Defendants.  In other words, the Government Response fails to identify, explain or establish any nexus between the alleged actions by these defendants and any effect whatsoever on Interstate commerce.  Accordingly, your Court should find that the civil disorder **did not** obstruct, delay and adversely affect interstate commerce and the movement of articles and commodities in interstate commerce and that the commerce clause element is not established, requiring dismissal of all charges against Defendants.

## REPLY TO GOVERNMENT RESPONSES ON ALL OTHER ISSUES

Defendant Brian DiPippa stands on the authority cited as to all other motions.

                                              Respectfully submitted,

                                              /S/ *Michael J. DeRiso*

                                              _____
March 11, 2024                                 MICHAEL J. DERISO, ESQUIRE

                                              2100 Law & Finance Building
                                              429 Fourth Avenue
                                              Pittsburgh, Pennsylvania 15219
                                              Phone: 412.765.1100
                                              Email: [deriso_esq2@msn.com](mailto:deriso_esq2@msn.com)
                                              *Counsel to Defendant Brian Dipippa*

CERTIFICATE OF SERVICE

I, Michael J. DeRiso, hereby certify that on March 11, 2024, a copy of the foregoing was filed electronically with the Clerk of Courts for the United States District Court for the Western District of Pennsylvania.

Respectfully submitted,

/S/ Michael J. DeRiso

_____
MICHAEL J. DERISO, ESQUIRE

March 11, 2024

2100 Law & Finance Building
429 Fourth Avenue
Pittsburgh, Pennsylvania 15219
Phone: 412.765.1100
Email: deriso_esq2@msn.com
*Counsel to Defendant Brian Dipippa*