IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Cr. No. 23-146 |
| v. | U.S. District Judge J. Nicholas Ranjan |
| KRYSTAL MARTINEZ-Di PIPPA | |

**REPLY TO GOVERNMENT'S OMNIBUS RESPONSE TO PRETRIAL MOTIONS**

Defendant Krystal Martinez-Di Pippa, through her attorney, Michael Ovens, files this Reply to the Government's Response to the Defendant's Pretrial motions:

**MOTION TO DISMISS**

The government cites to and relies on much of the reasoning from the Eleventh Circuit decision of *United States v. Pugh*, 90 F.4th 1318 (11th Cir. 2024). As there is a dearth of authority on the civil disorder statute, *Pugh* stands as the only post-*Lopez*, *Morrison*, and *Raich* court of appeals decision to assess the statute's jurisdictional limitations in the context of Congress's commerce clause power. Ms. Martinez-Di Pippa argues that *Pugh* should not be found persuasive, as its analysis and reasoning are not sound. Furthermore, the decision is impacted by Eleventh Circuit case law which is at odds with Third Circuit case law. This Court should reach the conclusion *not* reached by the *Pugh* Court – that 18 U.S.C. § 231(a)(3) is unconstitutional.

*Insufficient Interstate Commerce Nexus*

In *Pugh*, the defendant argued that the jurisdictional element of § 231(a)(3) was insufficient, the criminal act was too far removed from effects on interstate

commerce, and the phrase in the statute "incident to" meant that too much conduct could be penalized by use of the statute. The *Pugh* Court rejected each.

Jurisdictional Element. Proper exercise of Congress's commerce power requires some connection with economic activity. The initial motion to dismiss did not, as the government claims, argue that Congress's commerce power is limited to regulated commodities, goods, or specified economic activity. Government's Omnibus Response ("Govt Response"), ECF 93 at 28. However, as the commerce power is intrinsically linked with economic activities, Ms. Martinez-Di Pippa seeks to emphasize that there must be some economic activity involved. As stated in her initial motion, the Supreme Court has said "[w]hile we need not adopt a categorical rule against aggregating the effects of any noneconomic activity in order to decide these cases, thus far in our Nation's history our cases have upheld Commerce Clause regulation of intrastate activity **only where that activity is economic in nature**." *United States v. Morrison*, 529 U.S. 598, 613 (2000) (emphasis added). A statute enacted pursuant to the commerce power that in no way regulated economic activity would be outside Congress's constitutional authority.

Importantly, the aggregation concept which allows regulation of non-economic activity through combined effects can go too far. "[A] number of courts have applied *Wickard*'s aggregation concept to all activities, economic and non-economic, without acknowledging 'that *Lopez* approvingly discussed the aggregation principle only in conjunction with economic activity." *United States v. Rodia*, 194 F.3d 465, 477 (3d Cir. 1999) (quoting *United States v. Hickman*, 179 F.3d 230, 238 (5th Cir. 1999) (per

curium) (Higginbotham, J. dissenting). "[T]he weight of authority has assumed *Wickard*'s generic principle may be applied across economic frameworks, to both criminal and civil regulations, so long as there is a **strong nexus** between the interstate and intrastate activity." *Id*. (emphasis added).

*Pugh* was decided under Eleventh Circuit precedents which held "if a criminal statute contains a jurisdictional element that limits the statute to constitutional applications, that jurisdiction element immunizes the statute from . . . a facial attack." *Pugh*, 90 F.4th at 1326 (quoting *United States v. Scott*, 263 F.3d 1270, 1273 (11th Cir. 2001) (cleaned up). This circuit law is in stark contrast to that in the Third Circuit, where our court has stated

> "[t]he mere presence of a jurisdictional element . . . does not in and of itself insulate a statute from judicial scrutiny under the Commerce Clause, or render it per se constitutional. To the contrary, courts must inquire further to determine whether the jurisdictional element has the requisite nexus with interstate commerce. We must, therefore, determine whether the jurisdictional component in this case limits the statute to items that have an explicit connection with, or effect upon, interstate commerce."

*United States v. Bishop*, 66 F.3d 569, 585 (3d Cir. 1995).

*Bishop* involved the assessment of the federal carjacking statute, and whether that met constitutional standards, a statute which was further assessed in Ms. Martinez-Di Pippa's initial brief. That statute, along with others, has a much tighter jurisdictional linkage.

"A hard and fast rule that the presence of a jurisdictional element automatically ensures the constitutionality of a statute ignores the fact that the

connection between the activity regulated and the jurisdictional hook may be so attenuated as to fail to guarantee that the activity regulated has a substantial effect on interstate commerce." *United States v. Rodia*, 194 F.3d 465, 473 (3d Cir. 1999) (citing to *Lopez* as well as Seventh and Ninth Circuit cases stating the requirement of judicial review of jurisdictional elements). *Rodia* reiterated that the rule in *Bishop* governs our circuit's approach to these issues. It remains the approach. And its application is important to consider in this context because, "[a]s a practical matter, the limiting jurisdictional factor" in that case was "almost useless." *Id.* Because the activity regulated affected a market, the statute in question, 18 U.S.C. § 2252(a)(4)(B), passed constitutional muster. *Id.* at 476-80.

The jurisdictional element analysis required lengthy discussion by the *Rodia* Court, something completely at odds with *Pugh*'s conclusory citation to its own circuit's authority. As a result, *Pugh*'s analysis of the jurisdictional element should be given no deference or looked at as persuasive authority by this Court. There was nothing which the *Pugh* Court needed to assess. As argued in her initial motion to dismiss, the civil disorder statute's jurisdictional element includes such broad language as to sweep in a constitutional as well as unconstitutional applications. The civil disorder jurisdictional element fails.

<u>Criminal Act Too Far Removed</u>. Pugh argued that "the jury was not required to find her 'act' affected interstate commerce – the jury needed to find only the 'civil disorder' in which her act occurred affected interstate commerce". *Pugh*, 90 F.4th at 1325-26. This language meant the jurisdictional element was too far removed from

her actions. The Eleventh Circuit, in addressing this argument, noted it was "not so easily resolved." *Id.* at 1327. The *Pugh* Court looked to the federal arson statute and cases interpreting it in order to uphold the civil disorder statute.

The analogy to the federal arson statute, 18 U.S.C. § 844(i), does not save the analysis. The *Pugh* Court acknowledged while "the Supreme Court has not approved [the precise language used in the Civil Disorder statute], the Court has concluded that a similarly removed jurisdictional element satisfies the Commerce Clause." *Id.* However, that jurisdictional element is much different than the civil disorder statute. It puts the arson and the effect on interstate commerce close together. The act committed, arson, must affect property which *at the time of the act* was being used for commercial purposes. The result is an act which *itself* affects interstate commerce. *Russell v. United States*, 471 U.S. 858 (1985), cited as authority for the idea that the jurisdictional element may be removed, decided the question of "whether 18 U.S.C. § 844(i) applies to a two-unit apartment building that is used as rental property." *Russell*, 471 U.S. at 858. If that same building only used as a private dwelling the same effect on interstate commerce would not be present. Section 844(i) would not apply, a distinction made clear in *Jones v. United States*, 529 U.S. 848 (2000). The arson either destroys a building affecting interstate commerce or a building not affecting interstate commerce. The act is therefore totally adjacent to the jurisdictional element.

For the civil disorder statute, the act committed may have no effect on the civil disorder. The jurisdictional element, the civil disorder affecting interstate commerce,

5

might not be affected by the act. It is only required that an officer's response to the disorder be (nominally if at all) affected. A person, under the government's expansive reading of the commerce power, can be convicted of (a)(3) civil disorder for conduct which occurs far away, both in time and space[1], from the commerce effecting disorder. That is not so for the arson statute. Only when an arson destroys a property which *at that time* was affecting interstate commerce can an individual be convicted of 844(i).

*Pugh*'s logic on this basis should not be applied by this Court. The cites to other circuit decisions in Ms. Martinez-Di Pippa's original motion, at pages 14-15 support this idea, perhaps most forcefully through the holding of the Seventh Circuit in *United States v. Johnson*: the result is a jurisdictional element that "limits the statute's reach to a discrete set of arsons that have an explicit connection with or effect on interstate commerce." 42 F.4th 743, 754 (7th Cir. 2022). The civil disorder statute creates no discrete set of behaviors and there certainly is no explicit connection with or effect on interstate commerce required. The interstate commerce connection is too far removed from the conduct regulated. The statute should be deemed unconstitutional.

<u>Scope of "Incident To"</u>. The *Pugh* Court lastly dispensed with Pugh's argument that "incident to" would include too much conduct. The *Pugh* Court held that the term

---

[1] A civil disorder may spread across a large physical area or last for several hours, if not longer. The effect on interstate commerce could occur at the border of such a disorder, far away from an obstruction. It also might occur at the end of the disorder, longer after an obstruction. The arson statute does not allow for such a disconnect. *See United States v. Gaydos*, 108 F.3d 505 (3d Cir. 1997) (property no longer used as a rental property and therefore § 844(i) conviction overturned).

must be understood as it is used in legal parlance, *Pugh*, 90 F.4th at 1328, citing to *Birchfield v. North Dakota*, 579 U.S. 438 (2016) as support for this proposition. A cite to a case from 2016 to suggest a limitation for a term found in a statute originally passed in 1968 does little to show actual guidance in how to interpret this statute. The understanding by Congress of the phrase "incident to" might have been more in line with the understanding in *United States v. Rabinowitz*, 339 U.S. 56 (1950), a case allowing for expansive post-arrest searches, eventually overruled by *Chimel v. California*, 395 U.S. 752 (1969). *Chimel* provides the search incident arrest concept currently applied (and mentioned in *Pugh* as well). Applying this modern understanding of this term is also clearly at odds with the "fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary meaning at the time Congress enacted the statute." *New Prime Inc., v. Oliveira*, 586 U.S. ----, 139 S.Ct. 532, 539 (2019) (citing to *Wisconsin Central Ltd. v. United States*, 585, U.S. 274, 277 (2018) (cleaned up).

*Violative of First Amendment Protections*

The government again cites to the *Pugh* decision for its holding regarding First Amendment principles. Again, that decision is flawed. The *Pugh* Court held that "[i]t is hard to see how either 'obstruct' or 'impede' apply to speech or expressive conduct, except at the margins." *Pugh*, 90 F.4th at 1330. Reviewing definitions contemporary to the passage of § 231(a)(3), the Eleventh Circuit found "obstruct" to include a component of physical resistance. *Id.* The *Pugh* Court next found that "impede" could mean "to interfere with the progress of" and "to block"; to obstruct, hinder, check, or

7

delay; or to retard in movement or progress by means of obstacles or hinderances. *Id.* In doing so, it presumed an element of forcible resistance applied to each term. *Id.* That Court further found that while "interfere" would carry a broader meaning, "the canon of *noscitur a sociis* – which counsels that a word is given more precise content by the neighboring words with which it is associated [–]" would restrict the possible applications of the statute to a smaller set of conduct. *Id.* (citing to *United States v. Williams*, 553 U.S. 285, 294 (2008) (cleaned up)).

These limitations come from a strained reading of the statute and provide no assurances that the wide variety of conduct encompassed by "any act" would not be improperly criminalized. While it is true that "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge," it is hard to conceive of behavior, be it purely verbal criticism or physical activity like picketing or some other expressive conduct, which would not be reached by this statute if a law enforcement officer though it worked a hindrance on some law enforcement function during a gathering. The language of the statute gives extreme discretion to law enforcement officers to police gatherings where expression is taking place. The statute sweeps too widely and criminalizes speech. It is unconstitutional.

## ADOPTION OF OTHER MOTIONS

The government lodged no objection to Ms. Martinez-Di Pippa adopting the motions filed by Brian Di Pippa. Ms. Martinez-Di Pippa therefore seeks to join his motions, as they are decided by this Court or hearings are scheduled for their disposition.

Respectfully submitted:

*/S/ Michael Ovens*
Michael Ovens, Esq.
PA ID No. 317994
The Law Office of Michael Ovens
220 Grant Street, Suite 302
Pittsburgh, PA 15219
P: 412-368-3445
F: 412-219-5268
mike@ovenslaw.com