IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 2:23-CR-146-NR |
| | ) | |
| BRIAN DIPIPPA; | ) | |
| KRYSTAL MARTINEZ-DIPIPPA, | ) | |
| | ) | |
| Defendants. | ) | |

## OMNIBUS MEMORANDUM ORDER ON PRETRIAL MOTIONS

**J. Nicholas Ranjan, United States District Judge**

A grand jury indicted Defendants Brian DiPippa and Krystal Martinez-DiPippa on June 28, 2023, charging them with (1) conspiracy to obstruct law enforcement during civil disorder, in violation of 18 U.S.C. § 371; (2) obstructing law enforcement during civil disorder, in violation of 18 U.S.C. §§ 2 and 231(a)(3); and, as to Mr. DiPippa only, (3) use of an explosive to commit a federal felony, in violation of 18 U.S.C. § 844(h)(1). ECF 1. Pending before the Court are nine pretrial motions filed by Mr. DiPippa and four pretrial motions filed by Ms. Martinez-DiPippa. The government has filed an omnibus response. ECF 93. Defendants both filed reply briefs, addressing certain aspects of the motions. ECF 94; ECF 95. Considering the nature of the motions, the Court finds that a hearing is not needed on any of the motions, and so the motions are ready for disposition. The Court issues this omnibus order resolving the motions.

## I. Ms. Martinez-DiPippa's motion to adopt Mr. DiPippa's pretrial motions (ECF 87).

The Court **GRANTS** Ms. Martinez-DiPippa's motion to adopt Mr. DiPippa's motions. The Court's rulings as to Mr. DiPippa's motions apply equally to Ms. Martinez-DiPippa.

## II.   Mr. DiPippa's motion to produce exculpatory evidence (ECF 77).

Mr. DiPippa requests an order requiring the government to produce "all exculpatory evidence" under the government's obligations in *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, including material for the impeachment of the government's witnesses.   ECF 77.   The government acknowledges its continuing obligation to disclose exculpatory evidence under *Brady* and states that it is unaware of any undisclosed *Brady* material.   ECF 93, p. 2.   But the government objects to the early disclosure of any witness-impeachment material and proposes that disclosure of impeachment material two weeks before trial is enough to fulfill its obligations.   *Id.* at 4.   The Court agrees with the government.

*Brady* and its progeny create "a prosecutorial obligation rather than a general rule of pretrial discovery."   *United States v. Fenstermaker*, No. 21-41, 2023 WL 4950499, at *2 (W.D. Pa. Aug. 3, 2023) (Cercone, J.).   "[A]ctual exculpatory evidence" should be disclosed "without undue delay[,]" but impeachment material must be disclosed "in time for its effective use at trial."   *Id.* at *2; *United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983) ("right to a fair trial will be fully protected if disclosure [of impeachment material] is made the day that the witness testifies").   Disclosure of impeachment material 14 days before trial, as the government proposes, will permit Defendants to use that material effectively.

Accordingly, the motion is **GRANTED** in that the government shall disclose *Brady* material immediately upon its discovery.   But as to any impeachment material,

the motion for immediate disclosure is **DENIED**.  Instead, the government shall produce impeachment material no later than 14 days before trial.

III.    **Defendants' motions for government to provide notice of intent to use evidence under Federal Rules of Evidence 404 and 609 (ECF 78; ECF 88).**

Defendants move the Court to order the government to provide a written statement of the government's intent to introduce evidence of other crimes or wrongs under Federal Rule of Evidence 404(b) and impeachment evidence under Federal Rule of Evidence 609.  In response, the government states that it hasn't yet determined whether it intends to use such evidence, but proposes disclosing this evidence two weeks before trial.  ECF 93, p. 6.  Disclosure two weeks before trial generally amounts to reasonable notice of the government's intent to use this kind of evidence.  *United States v. Craig*, No. 21-338, 2024 WL 449386, at *5 (W.D. Pa. Feb. 6, 2024) (Conti, J.); *United States v. Brown*, No. 21-13, 2023 WL 1067540, at *5 (W.D. Pa. Jan. 27, 2023) (Horan, J.).  And this case is not so complex as to require earlier disclosure.  *Brown*, 2023 WL 1067540, at *5 ("circumstances and complexity of the prosecution" may warrant disclosure thirty days prior to trial (citation omitted)).

Thus, Defendants' motions for disclosure of Rule 404(b) and Rule 609 evidence are **GRANTED** in that the government must disclose such material 14 days before trial, but are otherwise **DENIED**.

IV.    **Mr. DiPippa's motion for early release of Jencks Act material (ECF 79).**

The government does not oppose Mr. DiPippa's motion for release of Jencks Act material 14 days before trial, so the motion is **GRANTED**.  The government shall provide such material at least 14 days before trial.

V.    **Mr. DiPippa's motion for discovery under Federal Rule of Criminal Procedure 16 (ECF 80).**

Mr. DiPippa moves for disclosure of discovery governed by Federal Rule of Criminal Procedure 16.  He also requests discovery related to the search of his house,

including surveillance leading up to the search and any evidence that might be considered a "fruit" of that search, information from any of the government's undercover "human sources," and "a list of all documents used, obtained, or written in connection with the investigation preceding the indictment that the government destroyed." ECF 80, pp. 2-3.

Rule 16 creates six categories of information that the government must produce upon a defendant's request, which, as relevant here, include: (1) defendant's oral, written, and recorded statements; (2) defendant's prior criminal record; (3) documents and objects within the government's possession, custody, or control and which (a) are material to preparing a defense, (b) intended for the government's use in its case in chief, or (c) were obtained from or belong to the defendant; (4) results or reports of any physical or mental examinations or scientific tests or experiments in the government's possession, custody, or control; and (5) a written summary of any expert testimony that the government intends to use in its case-in-chief. Fed. R. Crim. P. 16(a)(1)(A), (B), (D)-(G).

The government represents that it has fulfilled its Rule 16 obligations in providing the materials above and acknowledges that its obligation is ongoing. ECF 93, pp. 8-9. But the government contends that Mr. DiPippa's requests for evidence related to the search of his house, the government's confidential sources,[1] and a list of pre-indictment investigation documents that the government used in connection with Mr. DiPippa's case exceed the scope of permissible Rule 16 discovery.

The Court agrees with the government's position, at least at this point, as Mr. DiPippa requests material that is expressly precluded from discovery: "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or

---

[1] For the reasons set forth in Section VIII below, Mr. DiPippa has not met his burden to obtain additional discovery into any confidential informants.

prosecuting the case." Fed. R. Crim. P. 16(a)(2).  If Mr. DiPippa's requested discovery contains *Brady*, *Giglio*, or Jencks Act material, the government must provide that information at the requisite time, consistent with this Order.  The motion is **GRANTED** insofar as the government shall continue to comply with its Rule 16, *Brady*, and Jencks Act obligations, but is in all other respects **DENIED**.

## VI.    Mr. DiPippa's motion for the preservation and production of the government's notes (ECF 81).

Mr. DiPippa requests an order requiring the government to preserve and produce its rough notes and other evidence related to interviews with alleged co-conspirators, informants, or witnesses, so that the Court can determine whether that evidence constitutes *Brady* or Jencks Act material.  ECF 81, pp. 1-2.  The government acknowledges its obligation to preserve any rough notes and draft reports created during an investigation, and does not oppose an order requiring such preservation. ECF 93, p. 10; *United States v. Ramos*, 27 F.3d 65, 68 (3d Cir. 1994).  It has also instructed federal and state law enforcement to preserve any notes made during the investigation.  ECF 93, p. 10.  The government indicates that it hasn't reviewed these notes yet, so it is unaware of any *Brady* material contained there.  *Id.*  The Court resolves the motion by issuing the following three forms of relief.

First, Mr. DiPippa's motion is **GRANTED** to the extent that the government must retain rough notes and draft reports relating to its investigation.

Second, the motion is **GRANTED** to the extent that it seeks immediate disclosure of *Brady* material.  To ensure compliance with *Brady*, the government is **ORDERED** to review the rough notes within its custody or control, and within 14 days of this Order, produce any non-impeachment *Brady* material within those notes to Defendants.

Third, the motion is **DENIED** to the extent that it seeks immediate disclosure of impeachment or Jencks Act material.  That material must be produced at least 14

days before trial, consistent with this order. *See United States v. Armes*, No. 20-377, 2021 WL 1737459, at *6-7 (W.D. Pa. May 3, 2021) (Colville, J.) (denying motion to produce rough notes before government's deadline to provide impeachment and Jencks Act material as premature).

## VII.  Mr. DiPippa's motion to dismiss the indictment on grounds of selective prosecution (ECF 82).

Mr. DiPippa alleges that the government considers him to be an extreme anarchist with anti-government and anti-law enforcement beliefs.  ECF 82, pp. 2-3. He therefore argues that he is the victim of a selective prosecution designed to retaliate against him for engaging in conduct protected by the First Amendment and moves to dismiss the indictment.  *Id.* at 3.  He also seeks discovery into this issue, including into any decisions by the government to not prosecute any similarly situated individuals.  On careful review, the Court finds that Mr. DiPippa has failed to meet the high burden to establish selective prosecution or obtain any discovery into the issue, and so **DENIES** the motion.

"To establish a selective prosecution claim, a defendant must demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *United States v. Whitfield*, 29 F. Supp. 3d 503, 512 (E.D. Pa. 2014) (cleaned up), *aff'd*, 649 F. App'x 192 (3d Cir. 2016).  Focusing only on discriminatory effect here, which is dispositive, Mr. DiPippa has not met his burden.

To show discriminatory effect, Mr. DiPippa "must provide evidence that persons similarly situated [to him] have not been prosecuted." *United States v. Martinez*, 103 F. Supp. 3d 675, 680 (E.D. Pa. 2015) (cleaned up).  In other words, this would require him to show that there were other individuals at the protest or similar protests who: (1) committed similar conduct (*i.e.*, intentionally impeded enforcement,

including by using fire or explosive to do so); and (2) were of a different political affiliation than Mr. DiPippa.

Mr. DiPippa has failed to identify any similarly situated individuals.  He points only to general, unnamed, and unknown "individuals whose conduct was as severe as the alleged conduct" in this case.  ECF 82, p. 4.  He doesn't explain in any way how these unknown individuals are similarly situated to him.  *Martinez*, 103 F. Supp. 3d at 680 ("The bald assertion that the Government failed to prosecute twenty other individuals who were under investigation for a similar crime is not clear evidence sufficient to overcome the presumption of regularity that attaches to decisions to prosecute." (cleaned up)).

For example, Mr. DiPippa refers to other protesters who were present at the University of Pittsburgh O'Hara Student Center on April 18, 2023, and asks, "Why did federal authorities rush to prosecute Mr. DiPippa" but not them?  ECF 82, p. 5. But there is nothing to suggest that these protestors were similarly situated—*i.e.*, that they used explosives or otherwise directly impeded law enforcement.

The closest Mr. DiPippa comes is in his reply, where he alleges that there was someone at the protest who burned an effigy.  ECF 94, p. 4.  But that's not enough, as there is nothing to suggest that this individual's burning an effigy impeded law enforcement (*e.g.*, was done near or in a crowd of police officers, in the same manner as the offense conduct alleged in the indictment).  Nor is anything asserted about this person's political views; for example, if he held the same alleged anti-government political views as Mr. DiPippa, then he would not be a proper comparator.  Nor is

there any basis to suggest that the government knew who burned the effigy and whether that person was or wasn't prosecuted.[2]

Finally, Mr. DiPippa asks for discovery into this issue. But the Supreme Court has made clear that given the deference afforded to prosecutorial discretion, the standard for obtaining discovery is rigorous. There already has to be "meat on the bone" of the claim for there to be discovery, and because Mr. DiPippa offers only an unsubstantiated theory of selective prosecution, he is not entitled to discovery on the matter. *United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("the showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims"); *Martinez*, 103 F. Supp. 3d at 680 n.8.

## VIII. Mr. DiPippa's motion for the disclosure of the identity of the government's confidential informant (ECF 83).

Mr. DiPippa moves to have the government disclose the identity of any confidential informants under *Roviaro v. United States*, 353 U.S. 53 (1957). In *Roviaro*, the Supreme Court held that the government's privilege to withhold the identities of its informants must "give way" where "the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause[.]" *United States v. Jiles*, 658 F.2d 194, 196 (3d Cir. 1981) (quoting *Roviaro*, 353 U.S. at 60-61). It is Mr. DiPippa's burden to set forth a "specific need" for this disclosure. *United*

---

[2] Mr. DiPippa may have obtained this information from the affidavit of probable cause that accompanied the search warrant, which references the effigy burning. From the photograph in the affidavit and the description of the events, it does not appear that the burning of the effigy occurred in the proximity of and in a manner that obstructed law enforcement, which is the controlling predicate crime for which Mr. DiPippa was charged. Interestingly, the affidavit raises an inference that Mr. DiPippa or someone who was his associate was suspected of being involved in burning the effigy—which would certainly undercut the effigy-burning as a comparator incident. *See* Affidavit, ¶ 19 (characterizing the smoke-bomb throwing by Mr. DiPippa as being coordinated—*i.e.*, in close proximity and at approximately the same time as the burning of the effigy).

*States v. Brown*, No. 21-13, 2023 WL 1067540, at *6 (W.D. Pa. Jan. 27, 2023) (Horan, J.).

Mr. DiPippa has not met his burden.  To begin with, the motion does not identify the confidential informant in even a general way, so it's difficult for the Court to assess that individual's role in this case.  As far as the Court can discern from its review of the affidavit associated with the search warrants in this case, there was a tipster of some kind that knew about the protest and alerted law enforcement.  This tipster may be the confidential informant for which Mr. DiPippa seeks identifying information.  But Mr. DiPippa's basis for compelling disclosure of the tipster's information comes up short for at least two reasons.

First, a tipster informant typically is the "weakest of scenarios for compelling disclosure."  *See United States v. Balduino-Solano*, 268 F. App'x 200, 203 (3d Cir. 2008).  This is so because the tipster is not an active participant in the events at issue, and so disclosure of the person's identity is not necessary to ensure a fair trial.  *See United States v. Jiles*, 658 F.2d 194, 197 (3d Cir. 1981) ("At the other end of the spectrum, are the cases in which the informant was not an active participant or eyewitness, but rather a mere tipster.  In such cases, courts have generally held that the informant's identity need not be disclosed.").

Second, Mr. DiPippa has not made a particularized showing of relevance.  He states that the identity of any informant "is vital to the defense" because the informant "may have information relevant to the issues of entrapment, imperfect entrapment, and sentencing entrapment."  ECF 83, p. 2.  But Mr. DiPippa offers nothing beyond speculation that an entrapment occurred here.  He doesn't explain how he might have been entrapped or the role of the suspected informant in the entrapment.  He has to offer at least this information to meet his burden, and he has failed to do so.  *Pickel v. United States*, 746 F.2d 176, 181 (3d Cir. 1984) ("[M]ere speculation as to the usefulness of the informant's testimony to the defendant is

insufficient to justify disclosure of his identity." (cleaned up)); *United States v. Brenneman*, 455 F.2d 809, 811 (3d Cir. 1972) (finding unpersuasive "Appellant's speculation that testimony or information from the informant might have been used to impeach or cross-examine Holly and might even have led to the appellant's being able to raise the issue of entrapment"); *cf. United States v. Holland*, No. 21-871, 2023 WL 6810563, at *3 (D.N.J. Oct. 16, 2023) (specific need for informant's identity existed where defendant pointed to calls and texts with informant over five months to support entrapment defense).[3]

The motion is therefore **DENIED**.

## IX.   Mr. DiPippa's motion to suppress electronic evidence or return property (ECF 84).

Mr. DiPippa moves to suppress evidence from electronic devices recovered from the search of his home on grounds that the warrant violated the Fourth Amendment for failing "to establish a nexus between the electronic devices sought and the crime of civil disorder" and "to particularly describe electronic devices and storage mediums to be searched and seized[.]" ECF 84, p. 1. Both arguments fail.

The Fourth Amendment protects "[t]he right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. Amend. IV. Absent a valid exception, "searches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment[.]" *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (cleaned up). "A warrant may issue only upon a determination by a neutral magistrate that, given the totality of the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, probable cause exists to

---

[3] For these same reasons, the Court declines Mr. DiPippa's invitation to conduct an *in camera* hearing of any confidential informants. Such a hearing is not required, particularly given the dearth of information about the entrapment defense and any suspected tipster's role in it. *See Balduino-Solano*, 268 F. App'x at 202-03 (finding that *in camera* hearing not required for tipster informant).

support the proposed search." *United States v. Jackson*, No. 23-26, 2024 WL 150224, at *24 (E.D. Pa. Jan. 12, 2024) (cleaned up).

The probable-cause determination is "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). As Mr. DiPippa correctly argues, probable cause requires a nexus between the place to be searched, the suspected criminal activity, and the items to be seized. *United States v. Bowers*, No. 18-292, 2021 WL 2843172, at *2 (W.D. Pa. July 8, 2021) (Ambrose, J.). This nexus can be established based on direct evidence of a crime or "an accumulation of circumstantial evidence that together indicates a fair probability" that evidence of a crime will be found. *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002).

District courts "conduct only a deferential review of the initial probable cause determination made by the magistrate" to discern "whether the magistrate had a substantial basis for concluding that probable cause existed." *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (cleaned up). "If a substantial basis exists to support the magistrate's probable cause finding, we must uphold that finding even if a different magistrate judge might have found the affidavit insufficient to support a warrant." *Id.* (cleaned up).

The affidavit supporting the search warrant here established the requisite nexus between the electronic devices sought and the crime of civil disorder. The affidavit sets forth particularized facts connecting Defendants to the conduct giving rise to the civil disorder charge by placing them at the scene and describing their act of throwing the smoke bomb at law enforcement and departing on a motorcycle registered to Mr. DiPippa. ECF 93, pp. 16-17. It also contains particularized facts supporting Defendants' anti-law enforcement ideology, suggesting motive and intent to commit the offense. *Id.* at 18. The affidavit affirms that law enforcement recovered

items indicating that Defendants were in consort with other individuals who share their anti-law enforcement beliefs and may have worked with Defendants in committing the alleged offense. *Id.* Lastly, the affidavit details, based on the affiant's knowledge training, and experience, that computer files with evidence of the alleged crimes may be recovered from electronic devices. *Id.* at 16. Thus, the totality of the circumstances in the affidavit supported the Magistrate's finding that "a fair probability that contraband or evidence of a crime [would] be found" at Mr. DiPippa's home. *Gates*, 462 U.S. at 238.

Mr. DiPippa argues that the affidavit is deficient because it doesn't provide facts that Mr. DiPippa used any electronic device to commit the alleged offense. ECF 84, p. 6 ("[T]here is no probable cause to believe that evidence of the alleged civil disorder will be found in the electronic devices simply because they were located in the suspect residence."). But that position "impose[s] demands over and above those imposed by applicable standards." *Bowers*, 2021 WL 2843172, at *4. The affidavit sets forth sufficient "circumstantial evidence that together indicate a fair probability" that Mr. DiPippa communicated with others who shared his anti-law enforcement beliefs and that computer files may contain evidence of those communications or other evidence of his alleged crime. *Burton*, 288 F.3d at 103.

Mr. DiPippa also asserts that the affidavit did not describe the devices to be seized with sufficient particularity. ECF 84, pp. 3-4. The Court disagrees. The affidavit limited the agents to searching for "[e]vidence, contraband, fruits, or instrumentalities of violations of Title 18, United States Code, Section 231(a)(3)[,]" including "cellular phones, computers, and other devices or storage mediums that contain, or in which can be stored, evidence of a civil disorder." ECF 84, pp. 2, 4. In other words, the warrant confined the searching officers' discretion by limiting their search to a specific place (Mr. DiPippa's home) and a specific category of evidence (electronic devices capable of containing or storing evidence) related to a specific

offense (civil disorder). *United States v. Dewald*, 361 F. Supp. 3d 413, 416 (M.D. Pa. 2019); *see United States v. Yusuf*, 461 F.3d 374, 395 (3d Cir. 2006) (explaining that particularity clause was not violated where warrants authorized search for evidence of certain enumerated crimes, and the search was limited in time and by subject matter).

Mr. DiPippa objects to the purportedly broad sweep of the language "cellular phones, computers, and other devices or storage mediums that contain, **or in which can be stored,** evidence of a civil disorder" because it permitted law enforcement to search for items that were merely capable of storing data whether or not the devices contained evidence. ECF 84, p. 4 (emphasis in original). But that argument is something of a straw man. Probable cause means "a fair probability that contraband or evidence of a crime will be found in a particular place[,]" not that the place certainly contains that evidence. *Gates*, 462 U.S. at 238. So practically speaking, given the existence of probable cause here, there is no difference between electronic devices containing evidence of civil disorder and devices capable of storing evidence of civil disorder. In other words, the warrant would be functionally the same if it had simply read "cellular phones, computers, and other devices or storage mediums that contain evidence of a civil disorder" because all those devices also have the capacity to store such evidence anyway.

Alternatively, Mr. DiPippa seeks the return of the seized devices under Rule 41(g). ECF 84, pp. 6-8. The government does not object to returning all but three devices (two cellphones and a desktop computer). ECF 93, p. 20. As to the cellphones and desktop computer, the government contends that these items contain evidence of the charged offenses such that Mr. DiPippa is not entitled to their return. *Id.*

"If a motion for return of property is made while a criminal prosecution is pending, the burden is on the movant to show that he or she is entitled to the property." *United States v. Watson*, No. 19-203, 2023 WL 3794125, at *1 (W.D. Pa.

June 2, 2023) (Hardy, J.) (cleaned up). "Generally, a Rule 41(g) motion is properly denied if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture or the government's need for the property as evidence continues." *Id.* (cleaned up).

As these proceedings are ongoing, it is Mr. DiPippa's burden to show that he is entitled to return of the property, and he hasn't met it for at least two reasons. First, because the warrant was valid, Mr. DiPippa wasn't "aggrieved by an unlawful search[,]" nor has he explained how the deprivation of this property itself has "aggrieved" him. ECF 84, p. 7. Second, according to the government, the two cellphones and computer contain direct evidence of the charged offenses, so the government's interest in those items remains ongoing.

Lastly, the Court makes its ruling without need for an evidentiary hearing. Mr. DiPippa didn't request one, and a hearing is required only if the motion to suppress raises disputed issues of material fact. *United States v. Chambers*, No. 21-146, 2022 WL 3577913, at *2 (W.D. Pa. Aug. 19, 2022) (Hardy, J.). Mr. DiPippa's motion doesn't raise any disputed issues of material fact, since the basis for his challenge is limited "to the facts that were before the magistrate judge, and not information from other portions of the record." *United States v. Jackson*, No. 23-26, 2024 WL 150224, at *25 (E.D. Pa. Jan. 12, 2024) (cleaned up).

In sum, the Court **GRANTS** the motion insofar as the government is ordered to return the seized electronic devices that do not contain evidence of the alleged

conduct (that is, devices other than the two cellphones and desktop computer).  In all other respects, the motion is **DENIED**.

**X.      Defendants' motions to dismiss charges (ECF 85; ECF 86).**

Defendants move to dismiss the charges against them on grounds that 18 U.S.C. § 231(a)(3), which is the basis for Count 2 in the indictment,[4] is facially unconstitutional for three reasons: (1) it is unconstitutionally vague; (2) it criminalizes speech protected by the First Amendment; and (3) it exceeds Congress's authority to regulate interstate commerce.  In the alternative, Defendants argue that the indictment fails to satisfy the notice and presentment requirements of the Fifth and Sixth Amendments, requiring dismissal.

These same arguments have been raised in other cases and have been rejected. On review of this case law, as well as the statute at issue and relevant legal standards, the Court finds that the statute is constitutional.

**A.      Void for vagueness challenge.**

In his first challenge, Mr. DiPippa argues that Section 231(a)(3) is unconstitutionally vague in violation of due process.  ECF 85, p. 4.  "[A] law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits[.]" *Giacco v. Pennsylvania*, 382 U.S. 399, 402 (1966).  "A statute is void on vagueness grounds if it: (1) fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits; or (2) authorizes or even encourages arbitrary

---

[4] Count 2 is the lynchpin of all the charges in the indictment, as Counts 1 and 3 depend on the validity of Count 2.  So, if Count 2 is dismissed, the other counts would likely have to be dismissed too.

and discriminatory enforcement." *United States v. Fullmer*, 584 F.3d 132, 152 (3d Cir. 2009) (cleaned up).

But before the Court may assess a facial challenge on vagueness grounds, it must first "consider whether a statute is vague as applied to the particular facts at issue, for 'a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *United States v. Miller*, No. 23-135, 2024 WL 69140, at *5 (E.D. Pa. Jan. 5, 2024) (quoting *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18-19 (2010)) (cleaned up).

The Court concludes that Mr. DiPippa lacks standing to bring a facial vagueness challenge. The alleged act of throwing smoke bombs and fireworks at law enforcement officers during a protest fits within the conduct prohibited by Section 231(a)(3). *United States v. Phomma*, 561 F. Supp. 3d 1059, 1069 (D. Or. 2021) (attempt to spray police officers with bear spray during protest "fit within the type of conduct prohibited by § 231(a)(3)").

Mr. DiPippa's arguments supporting a facial vagueness challenge underscore this conclusion. For example, he argues that the phrase "any act to obstruct, impede, or interfere" is vague because it can be read to reach pure speech and expressive conduct. ECF 85, pp. 5-6. But the act of throwing smoke bombs and fireworks at police officers during a protest is clearly not pure speech and expressive conduct. *See United States v. Gossjankowski*, No. 21-123, 2023 WL 130817, at *11 (D.D.C. Jan. 9, 2023) ("[a]n ordinary person would have an intuitive understanding of what is proscribed by a ban on obstructing, impeding, or interfering with law enforcement."). He also argues that the term "civil disorder" is unclear such that the statute could apply "to virtually any tumultuous public gathering." ECF 85, p. 6. But the statute restricts its application to those "public disturbance[s] involving acts of violence by assemblages of three or more persons, which cause[] an immediate danger of or results in damage or injury to the property or person of any other individual[,]" and

Mr. DiPippa hasn't suggested that the events here were not a civil disorder of this kind.  18 U.S.C. § 232(1).

The vagueness doctrine is a backstop against "[in]discernible standard[s,]" not the fact that words can be susceptible to multiple definitions.  *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) ("[A] statute is unconstitutionally vague if, applying the rules for interpreting legal texts, its meaning specifies no standard of conduct at all.").  The standard imposed by Section 231(a)(3) is narrowly tailored to the alleged conduct here, such that Mr. DiPippa cannot complain of a facial problem with the statute.  *See United States v. McHugh*, 583 F. Supp. 3d 1, 27-28 (D.D.C. 2022).  Thus, Mr. DiPippa lacks standing to bring his facial challenge.[5]

### B.   First Amendment challenge.

Defendants argue that Section 231(a)(3) is facially overbroad because it criminalizes pure speech and expressive conduct protected by the First Amendment. ECF 85, pp. 9-11; ECF 86, pp. 23-30.  The Court disagrees.

"A court's first task in a facial challenge to the overbreadth of a statute is to determine whether it reaches a substantial amount of constitutionally protected conduct."  *United States v. Wood*, No. 20-56, 2021 WL 3048448, at *7 (D. Del. July 20, 2021) (cleaned up).

The Court concludes, like all of the other courts to consider the issue, that Section 231(a)(3) does not capture speech, but "prohibits only certain conduct, *i.e.* conduct that obstructs, impedes, or interferes with law enforcement . . . during a civil disorder[.]"  *Wood*, 2021 WL 3048448, at *7; *see also United States v. Pugh*, 90 F.4th

---

[5] To the extent Ms. Martinez-DiPippa makes her own facial vagueness challenge in joining Mr. DiPippa's motion, she also lacks standing since the indictment alleges that she committed the same conduct as Mr. DiPippa.  ECF 3, p. 3 ("Brian DiPippa and Krystal DiPippa . . . did move and attempt to move steel barriers and use an ignitable smoke generating device and an ignitable firework to obstruct, impede and interfere with law enforcement . . . .").

1318, 1330 (11th Cir. 2024); *McHugh*, 583 F. Supp. 3d at 28; *United States v. Mostofsky*, 579 F. Supp. 3d 9, 22 (D.D.C. 2021); *United States v. Howard*, No. 21-28, 2021 WL 3856290, at *11 (E.D. Wis. Aug. 30, 2021); *Phomma*, 561 F. Supp. 3d at 1068. Thus, Defendants face a difficult task, for "[r]arely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech." *Wood*, 2021 WL 3048448, at *7 (quoting *Virginia v. Hicks*, 539 U.S. 113, 124 (2003)).

Defendants point to only a few hypothetical situations that they say are captured by Section 231(a)(3), specifically "yell[ing] at police to desist from an arrest," "flip[ping] off officers to distract or encourage resistance," and "record[ing] police activity with a cell phone." ECF 85, pp. 9-10; ECF 86, p. 27 ("Telling the police to 'let them go'" qualifies as an "act" under Section 231(a)(3)). There are two problems with this position.

First, Defendants' hypotheticals are not consistent with a fair reading of the statute. As the Eleventh Circuit recently concluded, when Section 231(a)(3) is read in context, the words "obstruct, "interfere," and "impede" all must be taken together, and those words require "hindering a law enforcement officer or fireman with more than mere words." *See Pugh*, 90 F.4th at 1330.

Second, Defendants' hypotheticals are too remote to be enough to strike down the statute. A successful overbreadth challenge must reveal that "a substantial number of instances exist in which the provisions cannot be applied constitutionally." *Id.* (cleaned up). "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Wood*, 2021 WL 3048448, at *8 (cleaned up). Defendants' proffered examples, with nothing more, simply do not show that the statute reaches a substantial amount of constitutionally protected conduct. Thus, the Court rejects the overbreadth challenge.

C.    **Commerce Clause challenge.**

Defendants also argue that the statute is an unconstitutional exercise of Congress's authority under the Commerce Clause.  But the Court concludes that the jurisdictional element in the statute supports Congress's authority here.

Under the Commerce Clause, Congress has the "power to regulate those activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558-59 (1995) (cleaned up).  Congress can regulate these activities "so long as they substantially affect interstate commerce in the aggregate, even if their individual impact on interstate commerce is minimal." *Taylor v. United States*, 579 U.S. 301, 306 (2016).  There are four factors courts should consider to determine whether regulated activity substantially affects interstate commerce: (1) whether Congress made findings regarding the regulated activity's impact on interstate commerce; (2) whether the statute contains an "express jurisdictional element" that limits its reach; (3) whether the regulated activity is commercial or economic in nature; and (4) whether the link between the prohibited activity and the effect on interstate commerce is attenuated.  *Wood*, 2021 WL 3048448, at *5.  Ms. Martinez-DiPippa argues that Section 231(a)(3) fails under each of these factors and is therefore an improper exercise of the Commerce Power.  ECF 86, pp. 8-23.  The Court disagrees.

Importantly, Section 231(a)(3) contains an express jurisdictional element limiting the prohibited conduct to acts that occur during a civil disorder affecting interstate commerce:

> (3) Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any

federally protected function . . . [s]hall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 231(a)(3). Courts generally will not strike down a statute with an explicit jurisdictional hook based on the Commerce Clause, and this Court declines to do so here. *Wood*, 2021 WL 3048448, at \*6; *Pugh*, 90 F.4th at 1326; *see also United States v. Smith*, No. 22-84, 2023 WL 6879101, at \*2 (W.D. Pa. Oct. 18, 2023) (Ranjan, J.) ("[Defendant] has not identified any case, nor has this Court found any such case, in which a federal criminal statute including an interstate commerce jurisdictional element has been held to exceed Congress's authority under the Commerce Clause." (cleaned up)).

Ms. Martinez-DiPippa makes two main arguments as to why the jurisdictional element here is insufficient—both are unpersuasive.

First, she argues that the Eleventh Circuit in *Pugh* relied on Section 231(a)(3)'s jurisdictional element as sufficient of itself to survive a Commerce Clause challenge, an approach that she argues conflicts with Third Circuit precedent and so should be disregarded. ECF 86, pp. 11-15; ECF 95, pp. 3-4. But the Court doesn't read *Pugh* as suggesting that a jurisdictional element alone will be enough.[6] Rather, consistent with the Third Circuit, the Eleventh Circuit in *Pugh* found that the sufficiency of the jurisdictional element depended on its nexus with interstate commerce. *Pugh*, 90 F.4th at 1326 ("[W]hen a statute expressly requires that the proscribed conduct have an appropriate nexus with interstate commerce, courts can ensure, through case-by-case inquiry, that each application of the statute is constitutional, and thus the statute should not be struck down as being facially unconstitutional." (cleaned up)).

Second, Ms. Martinez-DiPippa argues that the jurisdictional element is otherwise insufficient because, as she reads Section 231(a)(3), it only requires a nexus between the civil disorder and interstate commerce, not the proscribed act (*i.e.*,

---

[6] Indeed, if *Pugh* were to stand for that proposition, it would conflict with well-settled Supreme Court precedent, including *Morrison*.

interfering with law enforcement) and interstate commerce. ECF 86, pp. 12-15. Courts have, in fact, read the statute that way. *See, e.g.*, *Howard*, 2021 WL 3856290, at *10 (concurring with Magistrate's Report that "Section 231(a)(3) is perhaps unusual . . . in that the defendant need not personally do anything that affects interstate commerce. The underlying civil disorder (which must affect interstate commerce) may be perpetrated wholly by third parties[.]"); *Mostofsky*, 579 F. Supp. 3d at 19 ("The connection to interstate commerce in § 231(a)(3) is slightly less direct than those in the jurisdictional elements of the Hobbs Act or RICO, but that does not make the jurisdictional element deficient."). Even so, that isn't "so attenuated as to fail to guarantee that the activity regulated has a substantial effect on interstate commerce." *United States v. Rodia*, 194 F.3d 465, 472 (3d Cir. 1999).

By its terms, the statute applies only in instances of civil disorder affecting interstate commerce—thus, a "person's act of attempting to obstruct or obstructing the law enforcement officer does impact interstate commerce, by preventing the officer from protecting interstate commerce." *Howard*, 2021 WL 3856290, at *10. In other words, the acts proscribed by the statute are necessarily part of the civil disorder affecting interstate commerce. *Wood*, 2021 WL 3048448, at *6 n.4 ("The statute does not purport to criminalize acts that are not inherently involved in the civil disorder itself.").

As the Eleventh Circuit concluded in *Pugh*, and with which this Court agrees, Ms. Martinez-DiPippa's "contrary view would anomalously allow Congress to criminalize creating a civil disorder that affected interstate commerce but not a person's interference with an officer's efforts to stop that disorder. Such an irrational line is inconsistent with the scope of Congress's authority." *Pugh*, 90 F.4th at 1328.

Finally, to the extent Defendants make a factual challenge to the sufficiency of the evidence proving the interstate commerce element (ECF 94, pp. 6-7), that issue is more appropriately raised at trial. *Wood*, 2021 WL 3048448, at *6.

**D.     Notice and presentment.**

Defendants argue that the indictment should be dismissed because it fails to provide them with adequate notice of the nature of the charges against them and does not ensure that the grand jury made the required probable-cause determination, especially as to the interstate commerce element.  ECF 85, p. 13; ECF 86, p. 32.  But the Court concludes that the indictment passes muster.

An indictment satisfies Federal Rule of Criminal Procedure 7(c) if it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007).  "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished."  *Wood*, 2021 WL 3048448, at *9 (cleaned up).  An indictment that satisfies Rule 7(c) likewise satisfies the requirements of the Fifth and Sixth Amendments.  *United States v. Mackey*, 652 F. Supp. 3d 309, 322 (E.D.N.Y. 2023).

By its terms, the indictment here satisfies Rule 7(c).  It explains the facts, details, and circumstances for which Defendants were charged: "[Defendants] incident to and during the commission of a civil disorder in the vicinity of the O'Hara Student Center at the University of Pittsburgh in the Oakland section of the City of Pittsburgh, which disorder obstructed, delayed and adversely affected interstate commerce . . . did move and attempt to move steel barriers and use an ignitable smoke generating device and an ignitable firework to obstruct, impede and interfere with law enforcement officers lawfully engaged in the performance of official duties."  ECF 3, p. 3.  Defendants' challenge to the interstate commerce element is more

appropriately characterized as an attack against the sufficiency of the evidence, but "[a] ruling on a motion to dismiss is not . . . a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. Bergin*, 650 F.3d 257, 265 (3d Cir. 2011) (cleaned up).

For all these reasons, the Court **DENIES** Defendants' motions to dismiss in their entirety.

## XI.    Ms. Martinez-DiPippa's motion for bill of particulars (ECF 89).

Ms. Martinez-DiPippa requests that the Court order the government to file a bill of particulars under Federal Rule of Criminal Procedure 7(f), on grounds that neither the indictment nor the indictment memorandum establishes the statute's jurisdictional element.

The Third Circuit "has instructed that a district court should grant a motion seeking a bill of particulars when an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial. However, a defendant is not entitled to general discovery of the government's case, evidence or witnesses." *United States v. Grier*, No. 12-161, 2012 WL 5614087, at *2 (W.D. Pa. Nov. 15, 2012) (McVerry, J.) (cleaned up). "In ruling on a request for a bill of particulars, a court should consider all information that has been disclosed to the defendant in the course of the prosecution, whether or not included in the indictment." *Id.*

Given the Court's ruling on the Commerce Clause challenge, the Court is satisfied that there's no need for a bill of particulars here. The government has made a proffer, based on the search-warrant affidavit, as to the evidence it intends to produce to satisfy the interstate-commerce nexus:

> Intercollegiate Studies Institute (ISI) is a non-profit 501(c)(3) educational organization funded by thousands of individuals and dozens of charitable foundations in Pennsylvania and around the country. ISI is headquartered in Wilmington, Delaware. Their mission is to provide

access to speakers and presenters for college students around the country. They focus on the freedom of speech and the right to peacefully assemble. ISI was responsible for organizing and paying for the speaking event on April 18, 2023, at the University of Pittsburgh featuring Michael Knowles and Brad Polumbo. ISI paid approximately $10,000 each to Michael Knowles and Brad Polumbo to have them speak at the event, and approximately $2,500 to the moderator, Leah Libresco Sargeant. There were two components scheduled to take place on April 18, 2023. These included a 90-minute organized debate and a 60-minutes Very Important Persons (VIP) meet and greet with ISI staff, students, and Michael Knowles. Due to safety concerns arising from the activity outside of the O'Hara Student Center on the night of April 18, 2023, UPP made the decision to end the event at approximately 9:00 p.m., thereby cancelling the promised "Meet and Greet" that was supposed to occur afterward. Consequently, ISI paid the speakers and moderator a total of $22,500 plus travel and lodging expenses for a service that was not fulfilled to the extent of the terms agreed upon. In addition, ISI incurred security costs totaling approximately $27,796.04 for the following services: $16,925.16 to the University of Pittsburgh for 28 UPP officers and 11 UPP supervisors for six (6) hours; $3,006.25 to a private security company called RIP Security; and $7,864.63 to Michael Knowle's private security, to include travels and lodging expenses. Despite the total security costs, protection was not adequate enough to maintain a safe enough environment in order to conduct the event as planned.

ECF 93, p. 33.

This factual representation is sufficient for Ms. Martinez-DiPippa to prepare her defense as to the jurisdictional element of the crime charged. The motion is therefore **DENIED**.

*********************

DATE:  April 3, 2024                                  BY THE COURT:

                                                     /s/ *J. Nicholas Ranjan*
                                                     United States District Judge