IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Criminal No. 23-146 |
| ) | |
| KRYSTAL DIPIPPA ) | |

### GOVERNMENT'S SENTENCING MEMORANDUM

AND NOW comes the United States of America, by its attorneys, Eric G. Olshan, United States Attorney for the Western District of Pennsylvania, and Shaun E. Sweeney, Assistant United States Attorney for said District, submitting as follows:

The parties have stipulated, pursuant to Rule 11(c)(1)(C), as to the sentence which should be imposed by the Court. The government respectfully requests that the Court accept the plea agreement and impose the recommended sentence.

### The Applicable Guideline Range

There is no agreement, however, with respect to the calculation of the offense level for this defendant. The government agrees with the Probation Officer's determination as to the offense level as set forth in the Presentence Investigation Report ("PIR") and the Addendum filed on December 3, 2024. That offense level was calculated by the Probation Officer based on guideline §2A2.2 (aggravated assault). According to the defendant, however, the aggravated assault guideline should not be applied.

The defendant first argues that the "elements based" approach favored by the Third Circuit should be used to determine the applicable guideline section, citing United States v. Jackson, 862 F.3d 365, 371 (3d Cir. 2017). The Jackson case involved an offense for which no guideline section had been assigned. The Court's analysis began with the recognition that, in such situations, § 2X5.1 directs that the "most analogous" offense guideline should be

1

applied. Id. at 371. In determining which guideline would be the most analogous, the Court in Jackson used the "elements based" approach. Id. at 371-389. The Court in Jackson explained:

> Even though we must look to the respective elements, we stress that this inquiry must be conducted in a flexible and open-ended fashion…While the inquiry may still be bounded by the elements of the offense of conviction, a perfect match of elements is not necessary (or even expected). Instead, the proffered guideline need only be within the same proverbial "ballpark" as the offense of conviction.

Id. at 375-76.

With respect to the applicability of the "elements based" approach in the instant case, the government agrees with the defendant. Moreover, the government agrees that, because the elements of the offenses which reference § 2A2.4 are more analogous than the elements for aggravated assault, § 2A2.4 is more analogous than § 2A2.2 and should therefore be used as the starting point for calculating the offense level. However, because the offense conduct in the instant case constituted an aggravated assault, the Court will be directed by the cross-reference provision of § 2A2.4(c)(1) to the aggravated assault guideline at § 2A2.2. Therefore, in the end, the Probation Officer and the PIR have correctly used § 2A2.2 to calculate the offense level.

The propriety of using the cross-reference from § 2A2.4 to § 2A2.2 is obvious. Application Note 1 to the aggravated assault guideline defines an aggravated assault as "a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) serious bodily injury; (C) strangling, suffocating or attempting to strangle or suffocate; or (D) an intent to commit another felony." The case at bar of course involves a felonious assault that involved a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon, and which in fact caused serious

bodily injury.

The defendant, however, claims that they did not use the large firework with the intent to injure the officers, but instead intended to merely obstruct the officers. The government's response is that a common sense review of the evidence leads to only one reasonable conclusion, which is that the defendants wanted to injure the officers with that device. Some of that evidence will be offered at the sentencing hearing, including videos of the incident along with other exhibits which will demonstrate the defendants' hatred of police and their celebration of incidents involving officers being injured or killed on the job. The defendants might plausibly argue that their rolling of ignited smoke devices into the crowd, although reckless and dangerous, was not intended to injure anyone. However, their claim that their tossing of a large firework into the middle of a crowd of police officers was not intended to cause injury is, in a word, unbelievable.

### The Conditions of Supervision

Considering the nature of the offense conduct in this case, the government requests that, while under supervision, the defendant be prohibited from associating with any persons plotting violence against any federal, state or local government or against any government personnel, including, but not limited to, law enforcement personnel.

Special conditions of supervision "must be reasonably related in a 'tangible way' to the defendant's crimes or something in [the defendant's] history, and it must involve no greater deprivation of liberty than is reasonably necessary to deter future crime, protect the public, or rehabilitate the defendant." United States v. Senke, 986 F.3d 300, 317 (3d. Cir. 2021) U.S.C. § 3582(d). In determining whether a condition is overbroad, the Court should consider its substantive breadth, duration, and the severity of the defendant's criminal conduct underlying the

conviction. United States v. Albertson, 645 F.3d 191, 198 (3d Cir. 2011).

In the instant case, the defendants conspired to use a large explosive firework to injure and obstruct law enforcement officers. This was not a spontaneous act resulting from being "caught up in the moment" during a protest for a cause about which they care deeply. They pre-planned the attack on the officers, knowing that officers would be present in a crowd of people in an environment of chaos caused by the defendants and their fellow anarchists. They have never apologized to the officers or shown any level of remorse regarding the injuries they have caused or the fact that they put many other officers in harm's way. The also have expressed no condemnation of persons who advocate for attacks on law enforcement personnel specifically, or acts of violence in support of anarchist goals generally. The have not expressed any regret regarding their disruption of the protesters who were present on the day of the incident to peacefully protest the event at the O'Hara Student Center.

Based on the foregoing, the special condition outlined above is appropriate in this case.

Finally, and as set forth in the plea agreement, the defendant's term of probation should include a condition requiring community service. The government intends to consult with the Probation Office, and with defense counsel, before providing a recommendation to the Court as to this condition.

                Respectfully submitted,

                ERIC G. OLSHAN
                United States Attorney

                */s/ Shaun E. Sweeney*
                SHAUN E. SWEENEY
                Assistant United States Attorney
                PA ID No. 53568