IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Cr. No. 23-146 |
| v. | US District Judge J. Nicholas Ranjan |
| KRYSTAL MARTINEZ-DiPIPPA | |

**DEFENDANT'S SENTENCING MEMORANDUM**

AND NOW comes Krystal Martinez-DiPippa, through her attorney, Michael Ovens, and, pursuant to 18 U.S.C. § 3553(a), Federal Rule of Criminal Procedure 32, and Local Rule 32(c)(4), respectfully submits the within Sentencing Memorandum and, in support thereof, avers as follows:

### *Introduction*

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). The great discretion granted to district courts ensures sentencing is individualized and courts serve the principle that "the punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949). This discretion is guided by 18 U.S.C. § 3553, which requires a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing.

In this case, through negotiation the parties have reached an agreement as to sentence whereby Ms. Martinez-DiPippa will serve three years of probation and perform community service, pay a $100 special assessment, and pay mandatory restitution. The sentence reached in this agreement between the government and Ms. Martinez-DiPippa meets the sentencing mandate and should be imposed.

### *The Sentencing Guidelines*

The probation office and Ms. Martinez-DiPippa agree on the applicable criminal history category. Because she has no criminal history points, Ms. Martinez-DiPippa is a criminal history category of I.

The probation office in their presentence report determined the total offense level would be 16. However, Martinez-DiPippa argued in her positions with respect to sentencing factors (ECF 130) that the total offense level should be 11. She adopts the reasoning from her prior filing here. The resulting guideline ranges would either be 21-27 (and in Zone D of the sentencing table) or 8-14 (and in Zone B of the table), respectively. Notably, the government advocates for the higher offense level and corresponding guideline range as well as a downward variance to the agreed upon sentence in the plea agreement.

### *The Sentencing Agreement*

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, "the parties stipulate and agree that the appropriate sentence in this case is a term of probation of three (3) years to include a term of community service for at least one (1) year, a special assessment of $100, and restitution in the amount to be determined

by the Court." The agreement was reached with the understanding that a downward variance would be appropriate based on the relative level of culpability between Ms. Martinez-DiPippa and Brian DiPippa, her codefendant and husband, and the expected sentence to be imposed on Mr. DiPippa, as the agreement is a "package" deal. *See United States v. Hodge*, 412 F.3d 479, 491 (3d Cir. 2005).

### *Sentencing Factors – 18 U.S.C. § 3553*

The sentencing decision is governed by 18 U.S.C. § 3553 to determine a sentence that is sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a) and (2)(A)-(D). Furthermore, the sentence must take into consideration the kinds of sentences available, the kinds of sentence and sentencing range established for the category of offense committed, any pertinent policy statement, the need to avoid unwarranted sentence disparities amongst similarly situated individuals, and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(3) – (7).

Krystal submits that this sentencing memorandum, the agreement reached with the government, and the factors mentioned in the plea letter provide sufficient justification for the below guideline range sentence agreed upon by the parties.

### *The Nature and Circumstances of the Offense*

Ms. Martinez-DiPippa acknowledges the presentence report accurately describes her role in its description of offense conduct. She acknowledges the seriousness of what occurred, as well as the harm and damage caused.

### *Ms. Martinez-Di Pippa's History and Characteristics*

The presentence report provides many of the general details of Krystal's life. Attached to this memorandum are many letters of support from the people that have known Krystal for years (if not for her entire life) that help provide a better picture of who she is and who she has been. It is a more complete picture of what she believes and how she sees the world.

The letters help show Krystal's upbringing and family life. When she was 15 years old her parents separated. Several of Krystal's family members (her sister, brother, aunt, and mother) have provided letters of support, but her aunt's letter specifically gives insight into the role Krystal played from that young age, taking on familial responsibilities. *See* Exhibit J.

Many friends describe kind and charitable acts. Her former colleagues tell of her caring nature at work. They describe the effects Krystal had on her colleagues as Krystal began her professional life and developed into her career. Whether these letters be from her current employer, who discusses Krystal's dedication to her work at a women's shelter and how she has gone above and beyond to attend to those staying at the shelter and to her coworkers (Exhibit A), to friends who have known Krystal for decades (Exhibit D), to family (Exhibit F), the letters submitted highlight

Krystal's character throughout her life. These letters demonstrate a life of charitable and conscientious works and good character. They show something more human, a more nuanced picture as opposed to someone reduced to symbols said to suggest political ideology or extreme viewpoint. They show the offense conduct was aberrant for her and totally out of line with what the people she knows and loves would expect of her. What her community has observed from her for decades.

Krystal has engaged in civic discourse and political discussion throughout her life. Unfortunately, her conduct in April of 2023 went well beyond what is acceptable, straying into dangerous and harmful territory. Spirited debate and disagreement are bedrock civic American principles. Violence is not. Krystal understands this. She will now carry with her the brand of felon for the rest of her life as a result of what happened. *See United States v. Smith*, 683 F.2d 1236, 1240 ("The stigma of a felony conviction is permanent and pervasive."); and *United States v. Wulff*, 758 F.2d 1121, 1125 (6th Cir. 1985) ("a felony conviction irreparably damages one's reputation."). This burden will impact her moving forward, but the friends and loved ones who have spent their time communicating their views of Krystal to this Court will certainly be there to help her move forward. The people she has cultivated as her community will help to support her.

### *Other Sentencing Factors*

*18 U.S.C. § 3553(a)(2)(A)*

Judgment requires consideration of the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and to provide just

punishment for the offense. Consistent with his argument above, Krystal believes a sentence below the guideline range accomplishes that end. The sentence results in lifelong effects for her as well as a lengthy period of supervision by the probation office. The sentence, as part of a package deal, also impacts her husband, whose absence will be felt for several years going forward. Until his release, incarceration will be on Krystal's mind daily.

*18 U.S.C. § 3553(a)(2)(B) and (2)(C)*

A court must also consider the need for the sentence imposed to afford adequate deterrence to criminal conduct. Similar to the factor discussed above, the sentence Brian will serve, 60-months, will also impact Krystal. Though living in the community, her life will be on hold during that time. She will have to navigate aspects of carceral life too, only she will be doing it from the outside in supporting Brian as he serves his time inside a Bureau of Prisons facility. This sentence for Brian therefore has a deterrent effect on Krystal. She will feel the distance every day of the sentence and be impacted differently than others who are sentenced to probation.

*18 U.S.C. § 3553(a)(3) and (a)(4)(A)*

The sentence agreed upon the parties and advocated for in this memorandum is below the guideline range. Ample reasons support the variance, as laid out throughout this memorandum.

*18 U.S.C. § 3553(a)(5)*

Ms. Martinez-DiPippa is not aware of any pertinent policy statement particularly applicable to his case.

*18 U.S.C. § 3553(a)(7)*

There is significant restitution sought. While Brian is incarcerated, Krystal will have to shoulder the burden of this financial obligation. A sentence different than that agreed upon will greatly delay this restitution payment.

### *Conclusion*

The Court should impose the sentence agreed upon in this case. While it varies from the guideline range at issue, as part of a package deal and alongside the other factors discussed in this memorandum it is sufficient but not greater than necessary to punish Krystal for her role in this conduct.

/S/ *Michael Ovens*
Michael Ovens, Esq.
PA ID No. 317994
The Law Office of Michael Ovens
220 Grant Street, Suite 302
Pittsburgh, PA 15219
P: 412-368-3445
F: 412-219-5268
mike@ovenslaw.com