IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 23-cr-146 |
| | : | |
| v. | : | |
| | : | |
| BRIAN DIPIPPA, | : | |
| | : | HONORABLE JUDGE |
| DEFENDANT. | : | J. NICHOLAS RANJAN |

<u>SENTENCING MEMORANDUM</u>

AND NOW, comes Brian DiPippa by and through his counsel, Michael J. DeRiso, and the DeRiso Law Group who file on his behalf the following sentencing memorandum.  Defendant and the Government have stipulated under Rule 11(c)(1)(C) plea agreement to the sentence which should be imposed.  Counsel respectfully requests that the Court accept that agreement and impose the agreed upon sentence.

THE GUIDELINE CALCULATION.

The Probation Department calculates the defendant at a total offense level of 18, a criminal history category of I yielding a guideline imprisonment range of 27 – 33 months.  Contrary to the guideline calculation by Probation, (which the government agrees with) Counsel contends that the application of USSG 2A2.2 is not applicable, as is explained in the note to that section, "Aggravated Assault " means a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (*i.e. not merely to frighten*) with that weapon; (B) serious bodily injury; (C) strangling, suffocating or attempting to strangle or suffocate; or (D) an intent to commit another felony."  Rather, USSG 2A2.4 (obstructing or impeding officers) is the more analogous offense as the charge 18 USC 231(a)(3) specifically includes language defining acts that "obstruct or impede officers."  The offense involved physical contact so the basic offense

level would be increased by three (3) levels; bodily injury was sustained so an additional two (2) levels should be added.

In Mr. DiPippa's case, applying USSG 2A2.4 the Base Offense Level would be 10, increased by 3 levels and 2 levels (as above) for an adjusted offense level of 15. The adjusted offense level should be reduced 2 levels for acceptance and an additional one level for timely notification/guilty plea. The total offense level should be 12. A total offense level of 12 and criminal history category of I yields a guideline range of imprisonment of 10-16 months.

THE SENTENCING PROCESS/PROCEDURE

The first step in determining a federal defendant's sentence requires a sentencing court to consider the federal sentencing guidelines because they are a product of Congressional action. United States v. Langford, 516 F.3d 205, 214 (3rd Cir. 2008) citing United States v. Goff, 501 F.3d 250, 257 (3rd Cir. 2007); Cooper, supra. A sentencing court's failure to correctly calculate the correct guideline range "thwarts" reasonableness review and taints the remaining sentencing analysis. United States v. Ali, 516 F.3d 205, 214 (3rd Cir. 2008).

A sentencing court must correctly calculate the correct offense level, criminal history category, enhancements and sentencing range. Langford, 516 F.3d at 213. After calculating the appropriate sentencing guidelines range, a sentencing court should also consider any motions for departure. Such a motion is distinct from a request for a "variance" from a sentencing guideline range. See United States v. Vampire Nation, 451 F.3d 189, 195 (3rd Cir. 2006) (A departure is based on the sentencing guidelines. A variance is based on consideration of the §3553(a) factors). See also Gunter, 462 F.3d at 247, n. 10.        As set

forth in <u>United States vs. Fumo</u>, 655 F.3d 288, 317 (3rd Cir. 2011):

> There are "two types of sentences that diverge from the original Guidelines range. A traditional sentencing 'departure' diverges . . . from the originally calculated range 'for reasons contemplated by the Guidelines themselves.' In contrast, a 'variance' diverges . . . from the Guidelines, including any departures, based on an exercise of the court's discretion under § 3553(a)." <u>United States v. Floyd</u>, 499 F.3d 308, 311 (3d Cir. 2007) (internal citations omitted). This distinction is more than mere formality. "Although a departure or a variance could, in the end, lead to the same outcome . . . it is important for sentencing courts to distinguish between the two, as departures are subject to different requirements than variances." <u>Id.</u> "[D]istrict courts should be careful to articulate whether a sentence is a departure or a variance from an advisory Guidelines range." <u>United States v. Vampire Nation</u>, 451 F.3d 189, 198 (3d Cir. 2006).

As explained by the Third Circuit Court of Appeals in <u>United States v. Grier</u>:

> [u]nder an advisory Guidelines scheme, district courts should continue to make factual findings by a preponderance of the evidence and courts of appeals should continue to review those findings for clear error. **The only change in the equation is that, at the end of the day, the district court is not bound by the recommended Guidelines range, but must impose a sentence based on all the factors articulated in §3553(a).** The court of appeals must then decide whether that final sentence is 'reasonable' (emphasis supplied). U.S. v. Grier, 475 F.3d 556, 561.

Although the <u>Gall</u> decision did not expand on the nature of the required §3553(a) consideration, the Third Circuit has expressed what it deems necessary. The Third Circuit requires that the record "demonstrate the trial court gave "meaningful consideration" to the §3553(a) factors." See <u>United States v. Vargas</u>, 477 F.3d 94, 101-102 (3rd Cir. 2006); <u>United States v. Manzella</u>, 475 F.3d 152 (3rd Cir. 2007); <u>United States v. Parker</u>, 462 F.3d 273, 276 (3rd Circuit 2006), citing <u>Cooper</u>, 437 F.3d at 329, n3. A district court need not "discuss and make findings as to each of the § 3553(a) factors if the record makes clear

the court took the factors into account in sentencing", however, the record must reflect that

the district court considered the § 3553(a) factors and that those factors were "reasonably

applied to the circumstances of the case." Id. A trial court should not sway from imposing

its independent judgment in such considerations and great deference is given to the trial

court "because it is in the best position to tailor a sentence to a particular defendant and his

offense." Vargas, 477 F.3d at 101 citing Cooper at 329-332; see also Jackson, 467 F.3d at 841;

United States v. Lloyd, 469 F.3d 319, 323 (3rd Cir. 2006); United States v. Dragon, 471 F.3d 501

(3rd Cir. 2006).

"Meaningful consideration" includes addressing the arguments of the parties which

have legal merit and correctly calculating the appropriate guideline range. Cooper, 437 F.3d at

329. A sentencing court "need not discuss every argument made by a litigant if an argument is

clearly without merit." Cooper, 437 F.3d at 329. "Nor must a court discuss and make

findings as to each of the § 3553(a) factors if the record makes clear the court took the factors

into account in sentencing. Cooper, 437 F.3d at 329.  A sentencing court must, however,

address a defendant's colorable arguments concerning specific facts germane to this third

step analysis.  United States v. Sevilla, 541 F.3d 226, 232 (3rd Cir. 2008).

Moreover, after consideration of the relevant factors, a sentencing court can vary

(i.e., a "variance") from the advisory guidelines range.  Gunter, 462 F.3d at 247, n. 10. In

Gall,  the Court's decision categorically rejected an "appellate rule that requires

'extraordinary' circumstances to justify a sentence outside the Guideline range". 128 S.Ct. at

595; see also Levinson, 543 F.3d at 196.   Rather than requiring extraordinary

circumstances to justify a deviation from the guidelines, the Court explained that a district

judge must explain his or her reasons for a variance in a particular case with sufficient justifications. Id.

    As set forth in Levinson:

> While the Guidelines are no longer mandatory, United States v. Booker, 543 U.S. 220, 245 (2005), and no "extraordinary circumstances" are needed to justify a sentence that varies from the recommended results, Gall, 128 S.Ct. at 595, and while there is no mathematical formula for determining whether a district court's justifications for a variance are sufficient, id. at 594-95, we nonetheless must be satisfied that, broadly speaking, an adequate justification is provided on the record.

                                    543 F.3d at 196.

    As long as a sentence falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors, a reviewing court must affirm. United States v. Jones, 566 F.3d 353, 366 (3rd Cir. 2009) citing Wise, 515 F.3d at 218. Where a district court decides to vary from the Guidelines' recommendations, an appellate court "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Tomko, 563 F.3d at 56, citing Gall, 128 S.Ct. at 597.

    According to Gall, Booker and related Third Circuit authority, in determining the minimally sufficient sentence, sentencing courts are required to consider the following 18 U.S.C. § 3553(a) factors:

    1) the nature and circumstances of the offense and the history and characteristics of the defendant;
    2) the need for the sentence imposed –
        (A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) the kinds of sentences available;

4) the kinds of sentence and the sentencing range established for –

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 944(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing commission into amendments issued under diction 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7) the need to provide restitution to any victims of the offense.

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2", as set forth above.   This directive, commonly called "sentencing parsimony" is defined as the least  restrictive

sentence necessary to achieve the purposes of sentencing.    United States v. Dragon, 471 F.3d 501, 503 (3rd Cir. 2006).

<u>THE 3553(a) FACTORS</u>

<u>NATURE AND CIRCUMSTANCES OF THE OFFENSE<br>AND HISTORY AND CHARACTERISTICS OF THE DEFENDANT</u>

<u>THE NATURE AND CIRCUMSTANCES OF THE OFFENSE</u>.

The Nature and Circumstances of the Offense are fully set forth in the PSIR and therefore are not set forth in detail here.[1]

<u>THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT.</u>

The History and Characteristics of the Defendant including Personal and Family data, physical condition, mental and emotional health, substance abuse, education, employment and financial conditions are fully and completely set forth in the Final PSR filed at ECF 125 and are therefore not set forth here.

<u>THE NEED FOR THE SENTENCE IMPOSED</u>.

    A.    To Reflect the Seriousness of the Offense, Promote Respect for the Law and Provide Just Punishment for the Offense.
    B.    To Afford Adequate Deterrence to Others From Committing Similar Conduct.
    C.    To Protect The Public From Further Crimes of the Defendant.

As the Court is aware, the parties arrived at a negotiated Rule 11(c)(1)(C) plea agreement, a copy of which has been provided to the Court.  That agreement calls for, inter alia, a term of imprisonment of five years, a special assessment of $200, and restitution in an amount to be determined by the Court.  The sentence is an upward variance but less than the mandatory 10 year sentence had the defendant been convicted of Count 3 of the Indictment returned against him.[2]

---

[1] ECF 125 ¶ 11-16.
[2] Use of an Explosive to Commit Federal Felony, 18 U.S.C. § 844(h)(1).

Imposition of such a sentence reflects the seriousness of the offense, promotes respect for the law and provides just punishment. Further, such a sentence affords adequate deterrence and protects the public from further crimes by this Defendant.

TYPES OF AVAILABLE SENTENCES

Sentencing options are set forth in the PSR at ¶¶ 66-81 and are therefore not set forth here. Counsel contends that imposition of the agreed upon sentence of 60 months, the special assessment of $200 and a term of supervised release of 18 months, no fine and restitution would be sufficient but not greater than necessary to achieve the goals of sentencing. Accordingly, it is respectfully requested that the Court accept the Rule 11(c)(1)(C) plea agreement.

With regard to the Government's Sentencing Memorandum request that, "*while under supervision the defendant be prohibited from associating with any persons plotting violence against any federal, state or local government or against any government personnel, including, but not limited to law enforcement personnel"* counsel objects to the imposition of such a condition. The Supreme Court has long held that the First Amendment's protection of free speech includes a "freedom of association." Generally, this means you can associate with others with similar beliefs. While Mr. DiPippa may hold political beliefs which are not mainstream, imposition of this condition is unreasonable. Counsel has conducted a brief survey of January 6th defendants[3] and the sentences imposed in those cases (where law enforcement was actually physically attacked) and can find no instance of imposition of such a condition in those cases.[4]  If what the government is suggesting is that the people they want to prevent DiPippa from associating with are actually "plotting violence" then this is already covered in the

---

[3] United States District Court, District of Columbia
[4] U.S. v. Foy, 21-CR-108-01; U.S. v. Sanford, 21-CR-86; U.S. v. Betancur, 21-CR-051, U.S. v. Nix, 21-CR-678-01.

standard conditions of supervision which preclude him from committing any local, state or federal

offense.

ANY APPLICABLE POLICY STATEMENTS FROM THE U.S. SENTENCING GUIDELINES

There are no applicable policy statements germane to Mr. DiPippa's case.

THE NEED TO PROVIDE EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE
OR CORRECTIONAL TREATMENT

Mr. DiPippa has obtained an Associate Degree in computer science and has a lengthy history of

full employment.  However, educational or vocational training, to the extent it is available, is requested.

Mr. DiPippa does not need medical care or correctional treatment, however, based on he is amenable to

participating in substance abuse treatment.

SPECIAL REQUESTS.

Counsel respectfully requests the Court make the following recommendations:

(i)     BOP Placement close to the Pittsburgh area to facilitate visitation by
friends or family.
(ii)    Recommendation for any vocational/educational training programs or
other treatment which Mr. DiPippa may be inclined to participate in,
including RDAP, if available.
(iii)   That the Court impose no fine.

_CONCLUSION._

It is acknowledged that Mr. DiPippa committed a serious crime.  At the time of his sentencing he will have been detained in the Butler County Jail some 18 months and 7 days without incident - successfully demonstrating his commitment to transitioning toward post sentence release.  A sentence of 60 months, imposition of the special assessment of $200, no fine, restitution and 18 months of supervised release is a sentence that reflects the seriousness of his crime.  Accordingly, counsel respectfully requests that the Court accept the Rule 11(c)(1)(C) plea agreement and impose a sentence as requested above - which would be sufficient but not greater than necessary to achieve the goals of sentencing.

Respectfully submitted,

/s/ Michael J. DeRiso

_____

MICHAEL J. DeRISO, ESQUIRE
Pa. Supreme Court Id. No.  076555

December 12, 2024

THE DERISO LAW GROUP
Law & Finance Building, Suite 2100
429 Fourth Avenue,
Pittsburgh, Pennsylvania 15219
Phone: 412.765.1100
Fax:    412.281.1821
Email:  deriso_esq2@msn.com
_Counsel to Defendant_