IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 2:23-cr-146-1 |
| | ) |
| BRIAN DIPIPPA, | ) |
| | ) |
| Defendant. | ) |

<u>TENTATIVE FINDINGS & RULINGS</u>

The Court has reviewed the relevant record in Defendant Brian DiPippa's case, including the final Presentence Investigation Report ("PSR"), the addendum to the PSR, the Probation Office's recommendation of an appropriate sentence, any sentencing memoranda, positions with respect to sentencing factors, responses to positions with respect to sentencing factors, exhibits thereto, and the video exhibits that were presented to the Court in connection with the appeal from the detention order.[1] The Court has also reviewed the Sentencing Guidelines themselves.

After careful consideration, the Court issues the following tentative findings and rulings.

I.  **Applicable enhancements and departures.**

No party has moved for a departure, and the Court does not intend to depart from the Guidelines range (though it reserves its right to vary). The applicable statutory mandatory minimums and maximums at Count 1 and Count 2 are a term of imprisonment of not more than 5 years, a fine of not more

---

[1] Under Fed. R. Crim. P. 32(e)(3) and LCrR 32(G), the Court finds that the Probation Office's sentence recommendations should not be disclosed to Mr. DiPippa, his counsel, or the government. That said, in determining Mr. DiPippa's sentence, the Court will not consider any factual or legal matter that has not been disclosed to both parties and counsel.

- 1 -

than $250,000, a term of supervised release of not more than 3 years, and a special assessment under 18 U.S.C. § 3013 of $100 at each Count.

## II. Tentative factual findings and conclusions.

Mr. DiPippa objects to the calculation of his offense level in the PSR. The Sentencing Guidelines do not specify the offense level for offenses under 18 U.S.C. § 231(a)(3). Instead, under U.S.S.G. § 2X5.1, the most analogous offense guideline should be applied. To determine if there is a sufficiently analogous offense guideline, courts compare "the elements of the offense of conviction with the purportedly analogous offense guideline and the elements of the various federal offenses covered by this guideline." *United States v. Jackson*, 862 F.3d 365, 371 (3d Cir. 2017). If there is more than one sufficiently analogous offense guideline, courts apply the most analogous one. *United States v. Cothran*, 286 F.3d 173, 177 (3d Cir. 2002) (which guideline is most analogous is based on factual findings).

The PSR calculates the base offense level using U.S.S.G. § 2A2.2 as the most analogous offense guideline, but Mr. DiPippa contends that U.S.S.G. § 2A2.4 is the more analogous offense to 18 U.S.C. § 231(a)(3). The government agrees that the elements of the offenses covered by U.S.S.G. § 2A2.4 are more analogous than the elements for aggravated assault under U.S.S.G. § 2A2.2, and U.S.S.G. § 2A2.4 should therefore be used as the "starting point for calculating the offense level." ECF 133, p. 1. However, the government argues that, under U.S.S.G. § 2A2.4(c), Section §2A2.2 should be applied because the offense conduct constituted aggravated assault.

The Court agrees with the government, and overrules Mr. DiPippa's objection. Under Application Note 1 to U.S.S.G. § 2A2.2, "aggravated assault" is defined as "a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B)

serious bodily injury; (C) strangling, suffocating, or attempting to strangle or suffocate; or (D) an intent to commit another felony." *See United States v. Rue*, 988 F.2d 94, 96 (10th Cir. 1993) ("To determine whether § 2A2.2 or § 2A2.4 applies, the sentencing court must examine the defendant's underlying conduct."); *United States v. Wheeler*, 831 F. App'x 53, 56 (3d Cir. 2020) ("[I]n applying guidelines, sentencing courts may find facts by a preponderance of the evidence and use them to raise sentences to a level below the statutory maximum."); *United States v. Williams*, 260 F. App'x 444, 447 (3d Cir. 2008) (district court did not err in applying § 2A2.2 after finding, by a preponderance of the evidence, that defendant had used a dangerous weapon with intent to cause bodily injury).

The Court tentatively finds, by a preponderance of the evidence, that the assault was aggravated, and will apply U.S.S.G. § 2A2.2. Mr. DiPippa disputes that a dangerous weapon was used with intent to cause bodily injury, and instead, claims that the intent was to obstruct. However, Mr. DiPippa threw a large firework into the middle of a group of police officers—this conduct is of the kind in which bodily injury is likely to result and is sufficient to establish his intent to cause bodily injury, at least by a preponderance of the evidence. The Court's tentative finding is based primarily on the video evidence of the incident, which the Court reviewed in connection with the detention appeal. The parties are free to present additional evidence at the sentencing hearing before the Court reaches any final decision on the issue of Mr. DiPippa's intent.[2]

---

[2] That said, this dispute is unlikely to have any material impact on the sentence here. As the parties are aware, the Rule 11(c)(1)(C) sentence here is largely driven by a "package deal," involving dismissal of a count that carries a 10-year mandatory minimum.

The government objects to the PSR's characterization of the device that Mr. DiPippa used as a "commercially available" firework, and suggests that the term "large firework" more accurately describes the device. ECF 127, p. 1. The Probation Office agreed and included this information in its addendum to the PSR. The Court finds that this amendment is appropriate. The Court therefore finds that the government's objection is moot.

### III. Adoption of the PSR.

Having resolved all objections, the Court will tentatively accept and adopt the findings and conclusions of the Probation Office's PSR (and addendum), including the calculation of the advisory Sentencing Guidelines in the PSR. The Court calculates the Guidelines range as follows.[3]

Counts 1 and Count 2 are grouped for purposes of calculating the Guidelines range. U.S.S.G. § 3D1.2(b). The Court finds that, pursuant to U.S.S.G. § 2A2.2(a), Mr. DiPippa's base offense level is 14. As a dangerous weapon was used, the base offense level is increased by 4 levels pursuant to U.S.S.G. § 2A2.2(b)(2)(B); the base offense level is further increased by 3 levels, pursuant to U.S.S.G. § 2A2.2(b)(3)(A), because three victims sustained bodily injury. Following a three-point decrease for acceptance of responsibility under U.S.S.G. § 3E1.1, Mr. DiPippa's total offense level is 18. Mr. DiPippa's criminal history score is 0, which establishes a criminal history category of I. As set forth in the sentencing table in Chapter 5 of the Sentencing Guidelines, a total offense level of 18 and a criminal history category of I result in a Guidelines range of 27-33 months of imprisonment and a term of supervised release of 1 to 3 years. The fine range for these offenses is $10,000-$100,000, and there is

---

[3] The Supreme Court has declared the Guidelines to be advisory, and it is therefore no longer mandatory for the Court to follow them, though the Court must still follow any statutory mandatory minimum.

a mandatory $100 special assessment under 18 U.S.C. § 3013 as to each Count. The Guidelines do not recommend probation because Mr. DiPippa is ineligible for probation.

### IV. Nature of sentence.

The stipulated sentence in this case is 60 months of imprisonment, which is above the Guidelines range. The Court understands the basis for this variance, given the dismissal of Count 3 as part of the plea agreement, and tentatively intends to accept the plea agreement. The parties should nonetheless be prepared to argue at the sentencing hearing the reasons for the Court to accept the Rule 11(c)(1)(C) agreement in this case.

### V. Restitution/Fine.

Pursuant to 18 U.S.C. § 3663A, restitution shall be ordered in this case. Requests for $48,819.08 and $1,405.95 in restitution were submitted by T.H. and the University of Pittsburgh Police, respectively. The Court tentatively intends to impose an order for this restitution as part of Mr. DiPippa's sentence. The parties should be prepared to address this issue, and any disputes pertaining to the amount of restitution at sentencing.

The Court tentatively intends to impose a fine, and the parties should be prepared to discuss the fine amount at sentencing.

### VI. Supervised-release conditions.

The Court tentatively concludes that part of any sentencing in this case will include a term of supervised release. It is the Court's practice to include as part of its tentative findings its tentative conditions of supervised release. The reason for this advance notice is for all counsel to be in a better position to address this issue at the sentencing hearing. *See United States v. Thompson*, 777 F.3d 368, 373 (7th Cir. 2015) ("Because conditions of supervised release do not take effect until the defendant completes his prison

term and is released, defendants given long prison sentences—and long prison sentences are common in federal sentencing—often have little interest in contesting conditions of supervised release at sentencing.  Criminals who court long prison sentences tend to have what economists call a high discount rate.  That is, they give little weight to future costs and benefits.  Defendants or their lawyers may also worry that a successful challenge to a condition or conditions of supervised release may induce the judge to impose a longer prison sentence, thinking that resistance to supervised release implies recidivist tendencies or intentions.  And often a defendant is given no notice in advance of the sentencing hearing of the conditions of supervised release that the judge is thinking of imposing, which can make it difficult for his lawyer to prepare arguments in opposition.").

Considering the case materials, Sentencing Guidelines, text of 18 U.S.C. § 3583, and factors under 18 U.S.C. § 3553(a), the Court tentatively intends to impose the attached conditions of supervised release.

The mandatory conditions are being imposed because they are mandatory.  Standard conditions 1-6 and 9 are being imposed so that the probation officer can effectively monitor compliance with the conditions of supervision, and thus promote respect for the law.  Standard condition 7 is being imposed to promote rehabilitation.  Standard conditions 8, 10, 11, and 12 are being imposed to ensure compliance with the law, protect the public from danger, and protect the probation officer.[4]

Additional condition 1 is being imposed to ensure compliance with the conditions of supervision, and thus promotes respect for the law.  Additional

---

[4] The Court has struck several of the standard conditions for being vague, redundant, or inapplicable.

conditions 2-5 are being imposed to ensure compliance with any restitution and fine obligations, and thus promote respect for the law. Additional conditions 6-7 are being imposed to deter criminal conduct and protect the public from harm. Additional conditions 8-10 are being imposed to promote rehabilitation.

Additional condition 11 is the associational condition proposed by the government, which states: "You are prohibited from associating with any persons plotting violence against any federal, state or local government or against any government personnel, including, but not limited to, law enforcement personnel." The Court finds that this condition is reasonably related and narrowly tailored to the offense conduct here and is appropriate to deter criminal conduct and protect the public from harm.

Mr. DiPippa objects to the imposition of an associational condition on the basis of the First Amendment's protection of freedom of association. ECF 137, p. 8. However, courts have long recognized that the sentencing court may impose restrictions on the First Amendment rights of individuals on supervised release that are reasonably and necessarily related to legitimate governmental interests. *See United States v. Loy*, 237 F.3d 251, 259 (3d Cir. 2001) ("As a convicted felon sentenced to a term of supervised release, [defendant's] constitutional rights do not have the same scope as those of ordinary persons….In evaluating constitutional challenges to probation conditions, we have upheld conditions that are directly related to deterring the offender and protecting the public, even when First Amendment interests are at stake." (cleaned up)); *Birzon v. King*, 469 F.2d 1241, 1243 (2d Cir. 1972) ("[W]e see no reason why the [g]overnment may not impose restrictions on the [First Amendment] rights of the parolee that are reasonably and necessarily related to the interests that the [g]overnment retains after his conditional release."); *Turner v. United States*, 347 F. App'x 866, 868 (3d Cir. 2009)

(upholding a special condition of parole that restricted parolee's associational and speech rights, and collecting similar cases finding that "[a] parolee's activities, even those involving constitutional rights, may be restricted if there is a reasonable basis to believe that engaging in the prohibited activity could hinder rehabilitation or pose a danger to society"); *United States v. Bolinger*, 940 F.2d 478, 480 (9th Cir. 1991) (upholding supervised release condition barring defendant's participation or membership in any motorcycle club, despite defendant's argument that the condition restricted his freedom of association); *United States v. Gracia*, 755 F.2d 984, 990, 991 (2d Cir. 1985) (upholding condition of probation that prohibited defendant from associating with known or suspected terrorists and people affiliated with known or suspected terrorists); *United States v. Bolin*, 976 F.3d 202, 212-14 (2d Cir. 2020) (summarizing cases upholding conditions restricting defendants from participating in or associating with certain organizations).

Counsel should raise objections to these conditions, if any, at the sentencing hearing.

### VII. Voluntary surrender.

Mr. DiPippa is in custody, and so the Court tentatively finds that he is not a candidate for voluntary surrender.

DATED this 2nd day of January, 2025.

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge